# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————————

No. 24-40637

———————————————

FEDERATION OF AMERICANS FOR CONSUMER CHOICE,
INCORPORATED; JAMES HOLLOWAY; JAMES JOHNSON; TEXAS TITAN
GROUP; PROVISION BROKERAGE, L.L.C.; V. ERIC COUCH,
*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, *Acting Secretary*,
*U.S. Department of Labor*, *in her official capacity*,
*Defendants-Appellants.*

CONSOLIDATED WITH

———————————————

No. 24-10890

———————————————

AMERICAN COUNCIL OF LIFE INSURERS; NATIONAL ASSOCIATION OF
INSURANCE AND FINANCIAL ADVISORS - FORT WORTH; NATIONAL
ASSOCIATION OF INSURANCE AND FINANCIAL ADVISORS - DALLAS;
NATIONAL ASSOCIATION OF INSURANCE AND FINANCIAL ADVISORS -
PINEYWOODS OF EAST TEXAS; NATIONAL ASSOCIATION OF
INSURANCE AND FINANCIAL ADVISORS - TEXAS; NATIONAL
ASSOCIATION OF INSURANCE AND FINANCIAL ADVISORS; NATIONAL
ASSOCIATION FOR FIXED ANNUITIES; INSURED RETIREMENT
INSTITUTE; FINSECA,
*Plaintiffs-Appellees*,

FINANCIAL SERVICES INSTITUTE; SECURITIES INDUSTRY AND
FINANCIAL MARKETS ASSOCIATION,
*Intervenor Plaintiffs-Appellees*,

*Continued on inside cover*

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, *in her official capacity as Acting Secretary*, *U.S. Department of Labor*, *Defendants-Appellants.*

———————————————

**Appeals from the United States District Court
for the Eastern District of Texas and the United States District
Court for the Northern District of Texas
USDC No. 6:24-CV-163
USDC No. 4:24-CV-482**

———————————————

**BRIEF OF AMICI CURIAE AARP, AARP FOUNDATION,
AND PUBLIC INVESTORS ADVOCATE BAR ASSOCIATION
IN SUPPORT OF DEFENDANTS-APPELLANTS**

———————————————

William Alvarado Rivera*
Genevieve Fontan
Dean Graybill
Rachel Lokken
Louis Lopez
AARP FOUNDATION
601 E Street, NW
Washington, DC 20049
Telephone: (202) 434-3392

*Counsel of Record
Counsel for Amici Curiae
AARP and AARP Foundation*

Jason W. Burge
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: (504) 586-5252

*Counsel for Amicus Curiae
Public Investors Advocate Bar
Association*

## CORPORATE DISCLOSURE STATEMENT
## AND CERTIFICATE OF INTERESTED PERSONS

**Case No. 24-40637, *Federation of Americans for Consumer Choice v. U.S. Department of Labor*, and Case No. 24-00163, *American Council of Life Insurers v. U.S. Department of Labor***

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.1 of the Rules and Internal Operating Procedures of the U.S. Court of Appeals for the Fifth Circuit, in addition to those disclosed in the parties' statements of interested persons, have an interest in the outcome of this case. Amici make these representations so that the judges of this Court may evaluate possible disqualification or recusal.

## 1.      AARP and AARP Foundation

The Internal Revenue Service has determined that AARP is organized and operated exclusively for the promotion of social welfare pursuant to Section 501(c)(4) of the Internal Revenue Code and is exempt from income tax. The Internal Revenue Service has determined that AARP Foundation is organized and operated exclusively for charitable purposes pursuant to Section 501(c)(3) of the Internal Revenue Code and is exempt from income tax. AARP and AARP Foundation are also organized and operated as nonprofit corporations under the District of Columbia Nonprofit Corporation Act. Other legal entities related to AARP and AARP Foundation include AARP Services,

Inc., and Legal Counsel for the Elderly. Neither AARP nor AARP Foundation has a parent corporation, nor has either issued shares or securities.

**2.      Public Investors Advocate Bar Association**

Public Investors Advocate Bar Association (PIABA) has no parent company, and no publicly held company has a 10% or greater ownership interest in the entity. PIABA is a trade or professional organization whose members represent public investors in disputes with financial industry members and whose mission includes advocating for the protection of public investors.

**3.      Counsel for Amici Curiae on this Brief**

The following individuals are counsel for Amici Curiae on this brief:

AARP and AARP Foundation
William Alvarado Rivera
Louis Lopez
Dean Graybill
Rachel Lokken
Genevieve Fontan

Public Investors Advocate
Bar Association
Jason W. Burge

Date: December 20, 2024

*/s/ William Alvarado Rivera*
William Alvarado Rivera
*Counsel of Record for Amici Curiae*
*AARP and AARP Foundation*

## TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT
AND CERTIFICATE OF INTERESTED PERSONS ................................. i

TABLE OF AUTHORITIES ........................................................ v

INTERESTS OF AMICI CURIAE ........................................... 1

SUMMARY OF ARGUMENT .................................................. 3

ARGUMENT ........................................................................ 5

I.     THE 2024 RETIREMENT RULE IS
CONSISTENT WITH ERISA'S PLAIN
LANGUAGE AND REMEDIAL PURPOSE,
AND BETTER REFLECTS CURRENT
REALITIES .............................................................. 5

II.    THE 2024 RETIREMENT RULE CLOSES
REGULATORY LOOPHOLES THAT ALLOW
FINANCIAL PROFESSIONALS TO ADVISE ON
CONFUSING, ILL-SUITED, AND HIGH-FEE
INVESTMENT PRODUCTS AND SERVICES ........................ 10

A.    The New Rule Finds Financial Professionals
Who Provide Covered Investment Advice on
One-Time Rollover Transactions to Be
Fiduciaries under ERISA .................................. 14

B.    The New Rule Imposes Fiduciary Obligations
On Investment Advice Offered in Trust and
Confidence by Broker-Dealers ......................... 16

C.    The New Rule Addresses Conflicts of Interests
Arising from the Sale of Annuities as
Retirement Assets ............................................ 17

**D.**    **The New Rule Provides Guardrails Against Deceptive Representations of Fiduciary Status**................ 19

**III.**    **THE 2024 RETIREMENT RULE IS NECESSARY TO PROTECT THE RETIREMENT SAVINGS OF MILLIONS OF AMERICANS FROM BIASED AND CONFLICTED INVESTMENT ADVICE** ................................. 20

**CONCLUSION** ......................................................................... 23

**CERTIFICATE OF COMPLIANCE** ....................................... 24

**CERTIFICATE OF SERVICE** ................................................ 25

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Am. Council of Life Ins. v. U.S. Dep't of Lab.*,
No. 4:24-cv-00482-O, 2024 WL 3572297
(N.D. Tex. July 26, 2024) ......................................................... 3

*Chamber of Com. of U.S.A. v. U.S. Dep't of Lab.*,
885 F.3d 360 (5th Cir. 2018)............................................... 12, 18

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982) ....................................................... 5

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ................................................. 6-7

*Fed'n of Ams. for Consumer Choice. v. U.S. Dep't of Lab.*,
No. 6:24-cv-00163-JDK (E.D. Tex. July 25, 2024)..................... 3

*Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*,
10 F.3d 700 (10th Cir. 1993)....................................................... 6

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank,*
510 U.S. 86 (1993)...................................................................... 9

*LaRue v. DeWolff, Boberg, & Assocs., Inc.*,
552 U.S. 248 (2008) .................................................................. 21

*LoPresti v. Terwilliger*,
126 F.3d 34 (2d Cir. 1997)........................................................ 10

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)................................................................. 5-6

*Pegram v. Herdrich*,
530 U.S. 211 (2000)................................................................ 9-10

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ................................................................................ 9

**STATUTES**

Administrative Procedure Act,
   5 U.S.C. §§ 702, 706 ............................................................................. 3

Employee Retirement Income Security Act of 1974,
29 U.S.C. §§ 1001 et seq. ........................................................................ 2
   § 1001(a) ................................................................................................ 5
   § 1002(21)(A)(ii) ................................................................................... 6
   § 1104 ..................................................................................................... 6
   § 1106 ..................................................................................................... 6
   § 1135 .................................................................................................. 6, 8

Internal Revenue Code
   26 U.S.C. § 4975 .................................................................................... 6

**CODE OF FEDERAL REGULATIONS**

17 C.F.R. § 240.15l-1 ............................................................................. 16
29 C.F.R. § 2510.3-21(c)(1)(ii) .............................................................. 8

**LEGISLATIVE HISTORY**

120 Cong. Rec. 3977 (1974) (Statement of Rep. Perkins) .............................. 7

1975 Fiduciary Rule
   40 Fed. Reg. 50,842 (Oct. 31, 1975) ...................................................... 7

"Fiduciary," Conflict of Interest Rule-- Retirement Investment Advice,
   81 Fed. Reg 20946 (Apr. 8, 2016) ......................................................... 8

Amendment to Prohibited Transaction Exemption 2020-02
   89 Fed. Reg. 32,260 (Apr. 25, 2024) ..................................................... 2

Retirement Security Rule: Definition of an Investment
Advice Fiduciary,

89 Fed. Reg. 32,122 (Apr. 25, 2024) ..................................................... 2, 8
89 Fed. Reg. at 32,126 ............................................................................ 19
89 Fed. Reg. at 32,156 ............................................................................ 19
89 Fed. Reg. at 32,179 ............................................................................ 14
89 Fed. Reg. at 32,184 ...................................................................... 15-16
89 Fed. Reg. at 32,256 ......................................................................... 8-9

## OTHER AUTHORITIES

AARP Research, *The Importance of Having a Plan for Retirement* 4
    (2024),  https://shorturl.at/3BP30 ............................................... 12

Vivek Bhattacharya, Gastón Illanes & Manisha Padi, *Fiduciary Duty
    and the Market for Financial Advice* 2 (Nat'l Bureau of Econ.
    Rsch., Working Paper No. 25861, 2023), https://www.nber.org/
    system/ files/ working_papers/ w25861/w25861.pdf ................................ 18

S. Kathi Brown, AARP Research, *Unbiased Financial Advice About
    Retirement is Important to Older Adults*, AARP (Jan. 2, 2024),
    https://www.aarp.org/pri/topics/work-finances-retirement/
    financial-security-retirement/fiduciary-duty-retirement/ .......................... 12

*CFP Board Survey: Americans Want Retirement Investment Advice
    to be in Their Best Interest*, CFP Bd. (Mar. 11, 2024), https://
    www. cfp.net/news/2024/03/cfp-board-survey-americans-want-
    retirement-investment-advice-to-be-in-their-best-interest ........................ 13

Council of Econ. Advisors, *The Retirement Security Rule –
    Strengthening Protections for Americans Saving for Retirement*,
    White House (Oct. 31, 2023), https://www.whitehouse.gov/cea/
    written-materials/2023/10/31/retirement-rule/ .................................. 14, 18

Benjamin Curry & John Schmidt, *Small Fees Have A Big
    Impact On Your Investments*, Forbes (May 5, 2023, 12:14 PM),
    https://www.forbes.com/advisor/investing/impact-of-investment-
    fees/ .......................................................................................................... 11

Inv. Co. Inst., *The Role of IRAs in US Households' Saving for
    Retirement*, 30 ICI Rsch. Persp. 1 (2023), https://www.ici.
    org/system/files/2024-02/per30-01.pdf..................................................... 14

John H. Langbein, Susan J. Stabile, & Bruce A. Wolk, *Pension and Employee Benefit Law* 58 (4th ed. 2006) ............................................ 22

Andy Markowitz, *Are the Last Boomers Ready for Retirement?*, AARP (Apr. 19, 2024), https://www.aarp.org/retirement/ planning-for-retirement/info-2024/peak-boomer-readiness. html?msockid=25742dd6773b6b3e01bc392b76b06abf ............................. 21

Elizabeth A. Myers & John J. Topoleski, Cong. Rsch. Serv., IF12007, *A Visual Depiction of the Shift from Defined-Benefit to Defined-Contribution Pension Plans in the Private Sector* (2021), https://crsreports.congress.gov/product/pdf/IF/IF12007 ............... 21

Nat'l Assoc. of Ins. Comm'rs, *Suitability in Annuity Transactions Model Regulation* (2020), https://content.naic.org/sites/default/ files/inline-files/MDL-275.pdf. ................................................................. 18

*New AARP Survey: 1 in 5 Americans Ages 50+ Have No Retirement Savings and Over Half Worry They Will Not Have Enough to Last in Retirement*, AARP (Apr. 24, 2024), https://shorturl.at/ gGkpJ ....................................................................................................... 11

Pew Charitable Trs., *Small Differences in Mutual Fund Fees Can Cut Billions From Americans' Retirement Savings* 9 (2022) ..................... 15

Tom Quaadman, U.S. Chamber of Com., Supplemental Comment Letter on Regulation Best Interest (Sept. 5, 2018), https:// www.sec.gov/comments/s7-09-18/s70918-4305958-173213.pdf ............... 13

SEC, *Annuities*, Investor.gov, https://www.investor.gov/ introduction-investing/investing-basics/glossary/annuities (last visited Dec. 16, 2024) ............................................................................. 17

SEC Inv. Advisory Comm., *Recommendation of the Investor Advisory Committee: Empowering Elders and Other Investors: Background Checks in the Financial Markets, Securities and Exchange Commission* 4-5 (2015) ........................................................ 19

Robert Shapiro & Luke Stuttgen, All. for Lifetime Income,
   *The Peak Boomers Impact Study: Executive Summary* (2024),
   https://www.protectedincome.org/wp-content/uploads/2024/04/
   Peak-Boomers-Econ-Impact-Study-EXEC-SUMM-ALI-RII-
   Shapiro-Stuttgen-EMBARGOED-Apr-18-2024-041624.pdf ................... 20

U.S. Dep't of Lab., *Regulating Advice Markets* (2016) ................................ 11

## <u>INTERESTS OF AMICI CURIAE[1]</u>

AARP is the nation's largest nonprofit, nonpartisan organization dedicated to empowering Americans 50 and older to choose how they live as they age. With a nationwide presence, AARP strengthens communities and advocates for what matters most to the more than 100 million Americans 50-plus and their families: health and financial security, and personal fulfillment. AARP's charitable affiliate, AARP Foundation, works for and with vulnerable people over 50 to end senior poverty and reduce financial hardship by building economic opportunity.

Public Investors Advocate Bar Association (PIABA) is a bar association comprised primarily of attorneys who represent members of the investing public. The mission of PIABA is to promote the interests of, and to help protect, the investing public. PIABA also advocates for public education regarding investment fraud and industry misconduct. PIABA often issues comment letters regarding FINRA rule changes, provides testimony to government agencies and Congress, and files amicus briefs on a variety of

---

[1]   No party's counsel authored this brief in whole or in part. Likewise, no party nor party's counsel contributed money for preparing or submitting this brief. No person or entity other than Amici contributed money for preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E). Counsel of record for all parties and intervenors received timely notice of Amici's intent to file this brief and consented to same. Fed. R. App. P. 29(a)(2).

issues pertaining to the protection of the investing public—the very people and businesses who provide corporations with the capital needed to drive economic activity in the United States. Particularly relevant to this case, PIABA members often represent persons harmed by conflicted financial advice.

The Department of Labor (DOL) issued the 2024 Retirement Rule to update the definitions of "investment advice" and "fiduciary" in the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., to reflect the realities of today's retirement investment landscape.[2] In doing so, DOL continues to fulfill its mission of protecting the retirement savings of working Americans and to prevent the loss of billions of dollars each year due to bias or conflicts of interest regarding investment advice. AARP and AARP Foundation have long advocated for this result.[3]

---

[2]   Retirement Security Rule: Definition of an Investment Advice Fiduciary, 89 Fed. Reg. 32,122 (Apr. 25, 2024). In addition to revising "investment advice," the 2024 Retirement Rule includes a suite of amendments to various Prohibited Transaction Exemptions. Amendment to Prohibited Transaction Exemption 2020-02, 89 Fed. Reg. 32,260 (Apr. 25, 2024). Amici confine their analysis to the first aspect of the Rule.

[3]   *See* Brief of AARP and AARP Foundation as Amici Curiae in Support of Defendants Urging Denial of Preliminary Injunction, *Mkt. Synergy Grp., Inc. v. U.S. Dep't of Lab.*, No. 16-CV-4083-DDC-KGS, 2017 WL 661592 (D. Kan. Feb. 17, 2017), *aff'd*, 885 F.3d 676 (10th Cir. 2018); Brief of Amici Curiae AARP et al. Urging Affirmance of the District Court's Decision in Its Entirety, *Chamber of Com. of the U.S. v. Hugler*, 231 F. Supp. 3d 152 (N.D. Tex. 2017), *rev'd*, 885 F.3d 360 (5th Cir. 2018) (No. 17-10238); Brief of Amici Curiae AARP et al. Urging Affirmance of the District Court's Decision in its Entirety,

But this Rule is now subject to an injunction and stay in this consolidated appeal alleging violations of the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706.[4] Amici respectfully urge this Court to reverse these rulings and allow DOL to implement the 2024 Retirement Rule to align who is an investment advice fiduciary under ERISA with congressional intent, the plain text and remedial purpose of the statute, and the current retirement investment framework.

## SUMMARY OF ARGUMENT

To ensure fair and effective enforcement of ERISA, Congress authorized DOL to issue regulations to implement the statute, including defining terms such as investment advice and fiduciary. DOL's 2024 Retirement Rule, which updated the definition of investment advice fiduciary, is consistent with ERISA's plain language and remedial purpose of protecting the retirement savings of millions of American workers. Equally important, the new Rule better reflects the realities of today's retirement investment landscape, where workers and retirees—instead of traditional benefit plan administrators—are

---

*Nat'l Ass'n for Fixed Annuities v. Perez*, 217 F. Supp. 3d 1 (D.D.C. 2016) (No. 16-1035).

[4]   *Fed'n of Ams. for Consumer Choice v. U.S. Dep't of Lab.*, No. 6:24-cv-00163-JDK (E.D. Tex. July 25, 2024); *Am. Council of Life Ins. v. U.S. Dep't of Lab.*, No. 4:24-cv-00482-O, 2024 WL 3572297 (N.D. Tex. July 26, 2024).

increasingly on their own to make consequential investment choices regarding their retirement.

AARP studies show that most retirement investors assume that financial professionals offering investment advice—even on one-time transactions—are held to high fiduciary standards of care, prudence, and loyalty under ERISA. This often is not the case. Due to current regulatory gaps, many financial professionals are free to offer biased or conflicted advice, putting commissions or other compensation above the investor's best interests. DOL's 2024 Retirement Rule is appropriate and necessary to reasonably and responsibly address these loopholes. Under its new definition of investment advice fiduciary, the Rule extends fiduciary obligations to investment advice offered during one-time rollover transactions, certain actions by broker-dealers that might otherwise fall through the cracks, and recommendations regarding retirement annuities. The Rule also provides guardrails against deceptive practices disclaiming fiduciary status.

The 2024 Retirement Rule is needed now more than ever to protect the retirement savings of millions of Americans from biased and conflicted investment advice. In the next several years, about 4.1 million Americans will reach retirement age and many will strain to meet their basic needs over the course of their retirement. The increased complexity of retirement investment

products and services amplifies the need for investment advice—given in an appropriate relationship of trust and confidence—by financial professionals. DOL's new Rule meets this critical moment to ensure a more secure retirement for Americans at a time when they need it most.

## ARGUMENT

## I.    THE 2024 RETIREMENT RULE IS CONSISTENT WITH ERISA'S PLAIN LANGUAGE AND REMEDIAL PURPOSE, AND BETTER REFLECTS CURRENT REALITIES.

Fifty years ago, Congress enacted ERISA for the purpose of addressing public concerns that the pension plans of millions of American workers were being mismanaged and abused. *See* 29 U.S.C. § 1001(a). To remedy this dire situation, Congress put into place the first comprehensive federal regulatory scheme to protect the retirement savings of employee benefit plan participants and beneficiaries. ERISA contained—for the first time—a set of broad, robust, and enforceable protections, including strong fiduciary duties for financial professionals offering retirement investment advice. Importantly, these fiduciary duties of care and loyalty are described as "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

Notably, Congress defined the term "fiduciary" in ERISA not "in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . thus expanding the universe of persons subject to fiduciary duties."

5

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). This broad definition states that "a person is a fiduciary with respect to a plan to the extent . . . he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so . . . ." 29 U.S.C. § 1002(21)(A)(ii). The statute also expressly bars fiduciaries from engaging in self-dealing and conflicts of interest to ensure that they fulfill their statutory responsibility to serve as trusted investment advice providers.[5] 29 U.S.C. §§ 1104, 1106.

To ensure effective enforcement of ERISA, Congress provided DOL with expansive authority to "prescribe such regulations as [it] finds ***necessary*** or ***appropriate*** to carry out the provisions" of the statute. 29 U.S.C. § 1135 (emphasis added); *see Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 708 (10th Cir. 1993) ("Congress delegated broad authority to the Secretary of Labor to publish regulations under ERISA.") Congress expressly delegated to DOL the power to define "accounting, technical and trade terms"—including "fiduciary" and "investment advice"—as used in ERISA. 29 U.S.C. § 1135. Congress also authorized DOL to depart from the common law of trusts prevailing in 1974, including the ability to "impos[e] duties upon a

---

[5]   The Internal Revenue Code likewise adopted a broad fiduciary mandate and the same prohibited transactions as ERISA, creating a strong statutory structure to protect retirement income in all its forms. 26 U.S.C. § 4975.

broader class of fiduciaries." *Donovan v. Cunningham*, 716 F.2d 1455, 1464

n.15 (5th Cir. 1983); 120 Cong. Rec. 3977, 3983 (1974) (Statement of Rep.

Perkins) ("The Committee has adopted the view that the definition of fiduciary

is of necessity broad . . . . This is a departure from current judicial precedents

but is necessary to the proper protection of these plans.").

In issuing the 2024 Retirement Rule, DOL reasonably exercised its

broad remedial authority to update its overly narrow regulatory definition of

investment advice fiduciary still in effect since 1975.[6] Back then, defined-

benefit pension plans were the primary tool for retirement security, with plan

administrators rather than investors making the investment choices subject to

strict ERISA standards. As discussed more fully below, 401(k)s and individual

retirement accounts (IRAs) dominate today's retirement investment landscape,

requiring workers and retirees, themselves, to manage their retirement assets.

For example, the decision to roll over one's full retirement assets into an IRA

---

[6] Under the 1975 fiduciary rule, fiduciary obligations apply when a person:
(1) renders advice as to the value of securities or other property, or makes
recommendations as to the advisability of investing in, purchasing, or selling
securities or other property; (2) on *a regular basis* to the plan; (3) *pursuant to
a mutual agreement*, arrangement or understanding, with the plan or a plan
fiduciary; (4) that the advice will *serve as a primary basis* for investment
decisions with respect to plan assets; and (5) that the advice will be
individualized based on the particular needs of the plan. Definition of the Term
"Fiduciary," 40 Fed. Reg. 50,842 (Oct. 31, 1975). The emphasized restrictions
are found nowhere in the statute.

can be one of the most important financial decisions Americans make. Yet,

many financial professionals offering advice for these one-time transactions—

often unbeknownst to investors—do not give investment advice that is in the

investor's best interest because they are not covered by ERISA's antiquated

fiduciary definition. As DOL observed, the 1975 fiduciary rule now serves to

"undermine, rather than promote, the statute's text and purpose."[7]

DOL's updated definition of investment advice fiduciary is wholly

"necessary" and "appropriate" and consistent with ERISA's plain language and

remedial purpose. 29 U.S.C. § 1135. The new Rule delineates such a fiduciary

as a financial professional who, for compensation:

> [M]akes professional investment recommendations on a regular
> basis as part of their business and makes a recommendation
> under circumstances that would indicate to a reasonable
> investor in like circumstances that the recommendation (a) is
> based on review of the retirement investor's particular needs or
> individual circumstances, (b) reflects the application of
> professional or expert judgment to the retirement investor's
> particular needs or individual circumstances, and (c) may be
> relied upon by the retirement investor as intended to advance
> the retirement investor's best interest.

89 Fed. Reg. at 32,122. Alternatively, one who "represents or acknowledges

that [they are] acting as a fiduciary . . . with respect to the recommendation" is

likewise held to a fiduciary standard. 29 C.F.R. § 2510.3-21(c)(1)(ii); *see* 89

---

[7] Definition of the Term "Fiduciary," Conflict of Interest Rule—Retirement
Investment Advice, 81 Fed. Reg. 20946, 20955 (Apr. 8, 2016).

Fed. Reg. at 32,256. By redefining fiduciary in this manner, DOL has

appropriately removed the "one-time" and other unduly restrictive and

outdated aspects of the 1975 fiduciary rule. The new Rule also recognizes the

trust and confidence that retirement investors necessarily must place in

financial professionals providing individualized investment advice or

recommendations in non-routine but nevertheless common and consequential

transactions where they would reasonably expect fiduciary duties to apply.

Rolling back Congress's broad definition of investment advice fiduciary

to the common law's more limited concept would contravene congressional

intent and ERISA's explicit purpose of protecting retirement benefits. *See*

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96

(1993) ("To help fulfill ERISA's broadly protective purposes, Congress

commodiously imposed fiduciary standards on persons whose actions affect

the amount of benefits retirement plan participants will receive."). Although

the common law of trusts "governed most benefit plans before ERISA's

enactment," the Supreme Court has stated that trust law "offers[s] only a

starting point, after which courts must go on to ask whether, or to what extent,

the language of the statute, its structure, or its purposes require departing from

common-law trust requirements." *Varity Corp. v. Howe*, 516 U.S. 489, 496-97

(1996); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("threshold

question" of coverage under ERISA is whether one "was performing a

fiduciary function"); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)

("Unlike the common law definition under which fiduciary status is

determined by virtue of the position a person holds, ERISA's definition is

functional.") (citation omitted).

In sum, DOL acted well within its broad statutory authority to update the

investment advice fiduciary rule in existence since 1975 to include financial

professionals who give investment advice for ERISA plan assets considering

the different retirement investment environment we now see some 50 years

later (and discussed more later in this brief). Indeed, courts broadly construe

remedial statutes, like ERISA, to effectuate their corrective purposes and

society's changed circumstances. The new Rule represents a responsive and

responsible way of moving from an obsolete and inconsistent regime to a

contemporary and uniform fiduciary standard that applies to all investment

advice involving ERISA plan assets.

## II. THE 2024 RETIREMENT RULE CLOSES REGULATORY LOOPHOLES THAT ALLOW FINANCIAL PROFESSIONALS TO ADVISE ON CONFUSING, ILL-SUITED, AND HIGH-FEE INVESTMENT PRODUCTS AND SERVICES.

With the overwhelming decline of defined-benefit pension plans,

retirement assets now come from a variety of other investment sources in the

increasingly complex retirement landscape, such as IRAs, bank accounts,

10

annuities, stocks, and bonds. There would be less concern about workers and

retirees having to make their own investment decisions if all financial

professionals were held to the same high fiduciary standards. However, this is

not the case due to significant gaps and insufficient guardrails against bias and

conflicted advice in ERISA's existing regulatory framework.

These loopholes come at a high cost to Americans. Biased or conflicted

investment advice erodes retirement savings by pushing retirement investors

into underperforming accounts with high fees. DOL estimates that such

underperformance due to bias or conflicts of interest in mutual funds could

cost IRA investors up to $404 billion over 20 years.[8] Notably, even modest

differences in fees can substantially impact investors' savings. For example, a

difference of just 0.5% in fees could save an investor $200,000 over the course

of 45 years where that investor has a starting balance of $10,000 and monthly

contributions of $100.[9] These numbers are compelling because recent studies

show that 20% of adults ages 50 and over have no retirement savings.[10] And

60% of non-retired adults over 50—who do not yet have a financial plan for

---

[8]   U.S. Dep't of Lab., *Regulating Advice Markets* 9 (2016).
[9]   Benjamin Curry & John Schmidt, *Small Fees Have A Big Impact On Your Investments*, Forbes (May 5, 2023, 12:14 PM), https://www.forbes.com/advisor/investing/impact-of-investment-fees/.
[10]  *New AARP Survey: 1 in 5 Americans Ages 50+ Have No Retirement Savings and Over Half Worry They Will Not Have Enough to Last in Retirement*, AARP (Apr. 24, 2024), https://shorturl.at/gGkpJ.

retirement—state they intend to develop one.[11] When those individuals do, they will likely turn to financial professionals for trusted advice.

Research shows that most retirement savers believe that financial professionals are already providing trusted, confidential, unbiased, fiduciary-level investment advice that is in their best interest, especially when it pertains to their retirement savings.[12] In doing so, retirement investors assume a degree of fairness and uniformity in financial professional standards of care, prudence, and loyalty that simply does not exist absent the 2024 Retirement Rule. According to AARP polling, 87% of adults ages 50-plus reported using advice from financial professionals to make important economic decisions, and 89% reported that they expected that the advice they received to be in their best interests.[13] Another recent survey by the Certified Financial Planner Board of Standards (CFP Board) found that an even higher percentage of retirement savers tend to place significant trust and confidence in financial professionals.

---

[11]  AARP Research, *The Importance of Having a Plan for Retirement* 4 (2024), https://shorturl.at/3BP30.

[12]  Indeed, recent surveys and polls contradict this Court's earlier suggestion that it is "ordinarily inconceivable" that a relationship of trust and confidence would be expected during, for example, one-time rollover transactions. *Chamber of Com. of U.S.A. v. U.S. Dep't of Lab.*, 885 F.3d 360, 380 (5th Cir. 2018).

[13]  S. Kathi Brown, AARP Research, *Unbiased Financial Advice About Retirement is Important to Older Adults*, AARP (Jan. 2, 2024), https://www.aarp.org/pri/topics/work-finances-retirement/financial-security-retirement/fiduciary-duty-retirement/.

Some 92% believed that the financial professional who recommended moving their funds out of a workplace retirement savings program into an IRA or annuity was required to make that recommendation in their best interest.[14] Only 5% of survey respondents did *not* expect the financial professional to fulfill a fiduciary role.[15]

The reality is that millions of American retirement savers—many of whom are older, vulnerable, and on low or fixed incomes—are duped into buying confusing, high-cost, excessively risky, or underperforming investment products and services because they have no idea that the investment advice rendered by their financial professional is not in their best interest. DOL's 2024 Retirement Rule would help minimize the significant dangers of the following regulatory loopholes, among others.

---

[14]  *CFP Board Survey: Americans Want Retirement Investment Advice to be in Their Best Interest*, CFP Bd. (Mar. 11, 2024), https://www.cfp.net/news/2024/ 03/cfp-board-survey-americans-want-retirement-investment-advice-to-be-in-their-best-interest.

[15]  *Id.*; *see also* Tom Quaadman, U.S. Chamber of Com., Supplemental Comment Letter on Regulation Best Interest (Sept. 5, 2018), https://www.sec. gov/comments/s7-09-18/s70918-4305958-173213.pdf (finding in a 2018 survey that 97% of investors already believed that financial professionals had their best interest in mind).

**A.     The New Rule Finds Financial Professionals Who Provide
Covered Investment Advice on One-Time Rollover
Transactions to Be Fiduciaries under ERISA.**

Rollover transactions refer to the practice of individuals shifting

retirement assets, such as 401(k) balances, to different investment vehicles

such as IRAs. The rollover industry moves huge sums of money each year. In

1996, investors rolled over $114 billion in retirement assets into IRAs,

primarily from employer-sponsored plans. By 2020, annual transfers

skyrocketed to $595 billion.[16] In 2022, the value of retirement assets rolled

over into IRAs was approximately $779 billion[17] and is expected to approach

$4.5 trillion cumulatively from 2022 through 2027. *See* 89 Fed. Reg. at 32,179.

At the same time, investment products and services offered by financial

professionals have become more numerous and complex. Investors often end

up in high-fee retirement accounts due to receiving biased or conflicted advice

to roll over an employer-sponsored plan. Older investors close to retirement

are especially vulnerable to the adverse impact of advice that is not in their

best interests as they customarily make significant one-time rollover decisions

---

[16]  Inv. Co. Inst., *The Role of IRAs in US Households' Saving for Retirement*,
30 ICI Rsch. Persp. 1, 6 (2023), https://www.ici.org/system/files/2024-02/
per30-01.pdf.
[17]  Council of Econ. Advisors, *The Retirement Security Rule – Strengthening
Protections for Americans Saving for Retirement*, White House (Oct. 31,
2023), https://www.whitehouse.gov/cea/written-materials/2023/10/31/
retirement-rule/.

to move their retirement savings out of ERISA-regulated plans upon
retirement. Many of the IRAs marketed to retirement investors have high
management fees, which substantially reduce the balance of a retirement
account over time. Indeed, one analysis suggests that over 25 years, investors
who rolled over assets in 2018 alone could lose $45.5 billion in savings due to
increased fees and lost earnings on fees.[18]

A financial professional who advises on a one-time recommendation is
exempt from fiduciary responsibilities under the 1975 fiduciary rule. As
discussed above, most retirement investors believe the financial professional's
advice is trusted and confidential as this transaction may be the investor's
single largest investment decision in their lifetime. Yet financial professionals
often have an inherent conflict of interest because they are routinely
incentivized to advise and recommend rollovers even when it is not in the
investor's best interest (e.g., moving to a higher fee account). Financial
professionals can earn commissions and added fees managing the new
investment, but nothing if the investor ignores the advice and decides to stay
put. Not surprisingly, rollover compensation represents a significant revenue
source for financial professionals offering investment advice. 89 Fed. Reg. at

---

[18]  Pew Charitable Trs., *Small Differences in Mutual Fund Fees Can Cut
Billions From Americans' Retirement Savings* 9 (2022).

32,184. The 2024 Retirement Rule addresses this gap by attaching ERISA's high fiduciary standards of duty and care to even one-time investment advice, assuming the transaction meets the Rule's trust and confidence criteria.

### B. The New Rule Imposes Fiduciary Obligations on Investment Advice Offered in Trust and Confidence by Broker-Dealers.

In 2019, the Securities and Exchange Commission (SEC) issued the Regulation Best Interest, which requires broker-dealers to act in the best interest of their clients when offering investment advice or recommendations involving securities. 17 C.F.R. § 240.15l-1. Yet its application is limited. For example, Regulation Best Interest only applies to retail investors and therefore does not extend to recommendations made to retirement plans. Moreover, it does not generally include such investments as real estate, certificates of deposit, certain insurance products, or commodities. The SEC's rule also does not extend to rollovers or the sale of annuities, nor does it cover the advice financial professionals give to small business employers for management of their retirement plans. Even more confusing, the same investment may or may not be a security depending upon specific circumstances, such as gold coins or interests in limited liability companies.

Again, DOL's 2024 Retirement Rule assigns fiduciary duties to broker-dealers to the extent that they offer retirement investment advice or recommendations in circumstances of trust and confidence. Such coverage

would prevent them from offering recommendations for ill-suited, high-fee

investment products that are not in the best interest of retirement savers.

### C. The New Rule Addresses Conflicts of Interests Arising from the Sale of Annuities as Retirement Assets.

Annuities further illustrate the complexities arising in the investment

marketplace. Variable annuities are subject to the federal securities laws; fixed

annuities are not. The status of fixed index annuities is ambiguous because,

according to the SEC, they "may or may not" be a security.[19] Broker-dealers or

insurance agents providing advice and recommendations on an array of

annuities could find themselves subject to the SEC's Regulation Best Interest

for some of them but not others. And in the case of fixed index annuities, even

the financial professional may be unsure whether the best interest standard

applies.

While the National Association of Insurance Commissioners (NAIC)

Model Rule would impose some obligations on those advising on the sale of

fixed annuities, the NAIC Model Rule has not been universally adopted,

reflects more of a "suitability" test than a "best interests" standard, and

---

[19] *See* SEC, *Annuities*, Investor.gov, https://www.investor.gov/introduction-investing/investing-basics/glossary/annuities (last visited Dec. 16, 2024) ("Variable annuities are securities regulated by the SEC. An indexed annuity may or may not be a security; however, most indexed annuities are not registered with the SEC. Fixed annuities are not securities and are not regulated by the SEC.").

excludes cash and non-cash compensation in determining material conflicts, which is the very source of many conflicts.[20] The 2024 Retirement Rule addresses this problem. A study from the National Bureau of Economic Research found that when applied in the annuities market, the fiduciary standard increased risk-adjusted returns by 25 basis points, improving investor outcomes.[21] Without a fiduciary standard, investors could lose $5 billion each year to biased or conflicted investment advice in the sale of annuities, alone.[22] The 1975 fiduciary rule exempts investment advice and recommendations of this nature; the 2024 Retirement Rule does not.[23]

---

[20] *See* Nat'l Assoc. of Ins. Comm'rs, *Suitability in Annuity Transactions Model Regulation* (2020), https://content.naic.org/sites/default/files/inline-files/MDL-275.pdf ("The requirements under [Section 6(a)(1)(d)] do not create a fiduciary obligation or relationship and only create a regulatory obligation as established in this regulation. . . . 'Material conflict of interest' does not include cash compensation or non-cash compensation.").

[21] Vivek Bhattacharya, Gastón Illanes & Manisha Padi, *Fiduciary Duty and the Market for Financial Advice* 2 (Nat'l Bureau of Econ. Rsch., Working Paper No. 25861, 2023), https://www.nber.org/system/files/working_papers/w25861/w25861.pdf.

[22] Council of Econ. Advisors, *supra* note 17.

[23] In its earlier decision, this Court distinguished between compensation for advice and compensation for the sale of products, such as annuities. *See Chamber*, 885 F.3d at 373. But this distinction belies today's retirement investment realities, the very thing the 2024 Retirement Rule intends to fix. As discussed above, ERISA authorizes DOL to update the broad functional definition of fiduciary as necessary and appropriate to cover transactions involving individualized advice about the sale of products, such as annuities, where retirement investors would reasonably expect a fiduciary duty to apply.

**D.    The New Rule Provides Guardrails Against Deceptive Representations of Fiduciary Status.**

Under the 1975 fiduciary rule, language making fiduciary relationships dependent upon "mutual agreement, arrangement, or understanding" has resulted in "fine print disclaimers" even when financial professionals use titles or otherwise market themselves as "providing tailored or individualized advice." 89 Fed. Reg. at 32,126. This creates an incredibly confusing situation for retirement investors. The lack of a common standard is made worse by the inability of retirement investors to obtain adequate information on the backgrounds of many of financial professionals.[24]

Under the 2024 Retirement Rule, disclaimers will not automatically control an investment advice fiduciary's status, at least where inconsistent with "the person's oral communications, marketing materials, applicable State or Federal law, or other interactions with the retirement investor." Where such an inconsistency arises, the disclaimer will be "insufficient to defeat the retirement investor's legitimate expectations." 89 Fed. Reg. at 32,156.

---

[24] *See* SEC Inv. Advisory Comm., *Recommendation of the Investor Advisory Committee: Empowering Elders and Other Investors: Background Checks in the Financial Markets, Securities and Exchange Commission* 4-5 (2015).

### III. THE 2024 RETIREMENT RULE IS NECESSARY TO PROTECT THE RETIREMENT SAVINGS OF MILLIONS OF AMERICANS FROM BIASED AND CONFLICTED INVESTMENT ADVICE.

The United States is in the midst of a full-blown retirement savings crisis. Over the next several years, an estimated 4.1 million Americans will reach retirement age each year.[25] According to an Alliance for Lifetime Income study, 52.5% of those Americans have less than $250,000 in retirement assets and will have to rely primarily on Social Security benefits that provide an average of $22,000 in income per year.[26] Another 14.6% with assets between $250,000 and $500,000 will strain to meet their financial needs over the course of their retirement.[27] The widest gaps were by education—college graduates had median retirements assets of $591,000, compared to $75,000 for high school graduates, and only $7,000 for those without high school diplomas.[28]

This unfortunate predicament stems in large part from the demise of defined-benefit pension plans. To illustrate, in 1975, 27.2 million people participated in private sector defined-benefit plans and just 11.2 million in

---

[25]  Robert Shapiro & Luke Stuttgen, All. for Lifetime Income, *The Peak Boomers Impact Study: Executive Summary* (2024), https://www.protected income.org/wp-content/uploads/2024/04/Peak-Boomers-Econ-Impact-Study-EXEC-SUMM-ALI-RII-Shapiro-Stuttgen-EMBARGOED-Apr-18-2024-041624.pdf.

[26]  *Id.*

[27]  *Id.*

[28]  *Id*.

defined-contribution plans. Strikingly, by 2019, over 85 million private sector workers had defined-contribution plans, while only 12.6 million people in the private sector had defined-benefit plans.[29] Importantly, defined-benefit plans served as the "great leveler" among all retirement savers and an essential part of the "three-legged stool" of retirement income, along with Social Security and savings.[30] For many Americans, the pension leg will be replaced by having to continue to work where possible, with 20% not planning to retire even by age 70 or 75.[31]

Adding to the retirement savings quandary is the fact that Americans are increasingly responsible for managing their own retirement investments. When ERISA was enacted in 1974, IRAs had only recently been created, and 401(k) plans did not yet exist. In the defined-benefit plans that were in place at the time, plan administrators made all the investment decisions subject to ERISA's strong protections. Since then, significant structural changes in our retirement system have drastically changed the market for investment advice. *See LaRue*

---

[29]  Elizabeth A. Myers & John J. Topoleski, Cong. Rsch. Serv., IF12007, *A Visual Depiction of the Shift from Defined-Benefit to Defined-Contribution Pension Plans in the Private Sector* (2021), https://crsreports.congress.gov/product/pdf/IF/IF12007.

[30]  Andy Markowitz, *Are the Last Boomers Ready for Retirement?*, AARP (Apr. 19, 2024), https://www.aarp.org/retirement/planning-for-retirement/info-2024/peak-boomer-readiness.html?msockid=25742dd6773b6b3e01bc392b76b06abf.

[31]  *Id.*

*v. DeWolff, Boberg, & Assocs., Inc.*, 552 U.S. 248, 255 (2008) (quoting John

H. Langbein, Susan J. Stabile, & Bruce A. Wolk, *Pension and Employee*

*Benefit Law* 58 (4th ed. 2006)) ("Defined contribution plans dominate the

scene today. In contrast, when ERISA was enacted . . . 'the [defined benefit]

plan was the norm of American pension practice.").

For many Americans, the increased complexity of IRAs, 401(k)s, and

other investment products and services also amplifies the critical need for

trusted and confidential advice from financial professionals. Studies show that

lay investors reasonably assume those professionals are held to high fiduciary

duties of care, prudence, and loyalty. What retirement investors fail to

understand, however, is that many financial professionals have free rein to

give biased and conflicted advice. As discussed above, financial professionals

giving one-time rollover recommendations or advising on the sale of annuities

are typically exempt under the 1975 fiduciary rule and may also fall into gaps

in other regulatory schemes.

In the current retirement investment landscape, large numbers of

Americans are retiring each year. Many are older, vulnerable, and on low or

fixed incomes. They need unbiased and conflict-free advice more than ever.

DOL's 2024 Retirement Rule helps address this crisis by assigning fiduciary

obligations to all financial professionals who provide investment advice on

retirement products and services if they meet the Rule's new definition of investment advice fiduciary. The result will be a much needed and more secure retirement for millions of Americans.

## <u>CONCLUSION</u>

For the foregoing reasons, amici respectfully request that this Court reverse the lower courts' judgments in their entirety.

December 20, 2024

*/s/ William Alvarado Rivera*
William Alvarado Rivera*
Louis Lopez
Dean Graybill
Rachel Lokken
Genevieve Fontan
AARP FOUNDATION
601 E Street, NW
Washington, DC 20049
(202) 434-3392
warivera@aarp.org
*Counsel of Record*

*Counsel for Amici Curiae*
*AARP and AARP Foundation*

Jason W. Burge
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: (504) 586-5252

*Counsel for Amicus Curiae*
*Public Investors Advocate Bar*
*Association*

# CERTIFICATE OF COMPLIANCE

In accordance with the Federal Rules of Appellate Procedure and the Local

Rules of this Court, I hereby certify the following:

1. I am a member in good standing of the Bar of this Court.

2. This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 5,030 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3. This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced font (namely, Times New Roman) in 14-point.

4. The text of the electronic Brief is identical to the text in the paper copies.

5. The electronic file containing the Brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.

Date: December 20, 2024          */s/ William Alvarado Rivera*
                                 William Alvarado Rivera

                                 *Counsel of Record for Amici*
                                 *AARP and AARP Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the court's CM/ECF system attaching a copy of this filing.

Date: December 20, 2024                 */s/ William Alvarado Rivera*
                                        William Alvarado Rivera

                                        *Counsel of Record for Amici*
                                        *AARP and AARP Foundation*