No. 24-40637

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Federation of Americans for Consumer Choice, Incorporated; James Holloway; James Johnson; Texas Titan Group; Provisions Brokerage, L.L.C.; V. Eric Couch,

Plaintiffs-Appellees,

v.

United States Department of Labor; Julie A. Su, Acting Secretary, U.S. Department of Labor, in her official capacity,

Defendants-Appellants.

Consolidated with No. 24-10890

American Council of Life Insurers; National Association of Insurance and Financial Advisors - Fort Worth; National Association of Insurance and Financial Advisors - Dallas; National Association of Insurance and Financial Advisors - Pineywoods of East Texas; National Association of Insurance and Financial Advisors - Texas; National Association of Insurance and Financial Advisors; National Association for Fixed Annuities; Insured Retirement Institute; Finseca,

Plaintiffs-Appellees,

Financial Services Institute; Securities Industry and Financial Markets Association,

Intervenor Plaintiffs-Appellees

v.

United States Department of Labor; Julie A. Su, Acting Secretary, U.S. Department of Labor, in her official capacity,

Defendants-Appellants.

On Appeal from the United States District Courts
for the Eastern and Northern Districts of Texas

## BRIEF FOR APPELLANTS

(Attorneys Listed on Following Page)

SEEMA NANDA
*Solicitor of Labor*

WAYNE R. BERRY
*Associate Solicitor*

MEGAN HANSEN
*Counsel for Regulations*

ALYSSA C. GEORGE
*Senior Trial Attorney*

*U.S. Department of Labor*
*Office of the Solicitor*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

DAMIEN DIGGS
*United States Attorney*

LEIGHA SIMONTON
*United States Attorney*

MICHAEL S. RAAB
STEVEN H. HAZEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2498*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellants are all governmental parties.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to an express delegation of rulemaking authority in the Employee Retirement Income Security Act (ERISA), the Department of Labor issued a rule and certain related regulatory amendments designed to, among other things, amend the test for determining when an individual falls within the statutory definition of a "fiduciary" to an ERISA plan based on their "render[ing] investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan." 29 U.S.C. § 1002(21)(A)(ii); 26 U.S.C. § 4975(e)(3). The district courts issued universal stays of the effective date of these regulatory changes. Given the importance of the issues raised, the government believes that oral argument would assist the Court.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF THE ISSUE ...................................................................... 1

STATEMENT OF THE CASE ....................................................................... 2

    A.    Statutory Background ................................................................. 2

    B.    Regulatory Background .............................................................. 6

    C.    The Retirement Security Rule .................................................... 12

    C.    Prior Proceedings ................................................................... 19

SUMMARY OF ARGUMENT ..................................................................... 22

STANDARD OF REVIEW .......................................................................... 26

ARGUMENT ........................................................................................... 26

I.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits ................................................................................................. 26

    A.    The Retirement Security Rule Is Consistent with ERISA's Text and This Court's Precedent ......................................................... 26

    B.    The District Courts' Approach Misunderstands This Court's Precedent and the Rule Itself ..................................................... 33

II.    The Remaining Factors Weigh Against a Stay .................................... 46

III.    At a Minimum, Any Relief Should Be Limited to Plaintiffs ................... 48

CONCLUSION ........................................................................................ 53

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                                   **Page(s)**

*Alliance for Hippocratic Med. v. U.S. Food & Drug. Admin,*
  78 F.4th 210 (5th Cir. 2023),
  *rev'd on other grounds*, 602 U.S. 367 (2024) ................................................. 26, 51

*American Sec. Ass'n. v. U.S. Dep't of Labor,*
  No. 8: 22-cv-330-VMC-CPT, 2023 WL 1967573
  (M.D. Fla. Feb. 13, 2023), *appeal dismissed,*
  No. 23-11266-F, 2023 WL 4503923 (11th Cir. May 17, 2023) ................................ 11

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022) ................................................................ 49

*Braidwood Mgmt., Inc. v. Becerra,*
  104 F.4th 930 (5th Cir. 2024) .............................................................. 50

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ..................................................................... 48, 52

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ............................................................. 50, 51

*Chamber of Commerce of U.S. of Am. v. U.S. Dep't of Labor,*
  885 F.3d 360 (5th Cir. 2018) ............................. 1, 8, 9, 10, 11, 14, 20, 23, 27, 28, 29,
                                                              31, 32, 33, 35, 36, 37, 38, 42, 43, 45

*Department of Homeland Sec. v. New York,*
  140 S. Ct. 599 (2020) ..................................................................... 49

*Federation of Ams. For Consumer Choice, Inc. v. U.S. Dep't of Labor,*
  No. 3: 22-CV-00243-K-BT, 2023 WL 5682411 (N.D. Tex. June 30, 2023) .......... 12

*Gill v. Whitford,*
  585 U.S. 48 (2018) ....................................................................... 26, 48

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.,*
  530 U.S. 238 (2000) ......................................................................... 4

*Hughes,* Exchange Act Release No. 4048,
  1948 WL 29537 (Feb. 18, 1948) ........................................................... 27, 30

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank,*
  510 U.S. 86 (1993) ........................................................................ 32

*Labrador v. Poe ex rel. Poe,*
  144 S. Ct. 921 (2024) .................................................................. 49

*Loper Bright Enters. v. Raimondo,*
  144 S. Ct. 2244 (2024) ............................................................... 33

*Louisiana v. Becerra,*
  20 F.4th 260 (5th Cir. 2021) ................................................. 50, 52

*Market Synergy Grp, Inc. v. U.S. Dep't of Labor,*
  885 F.3d 676 (10th Cir. 2018) .................................................. 10

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993) ............................................................ 4, 27-28

*National Ass'n for Fixed Annuities v. Perez,*
  217 F. Supp. 3d 1 (D.D.C. 2016) ......................................... 10, 40

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................... 46

*Secretary of Labor v. Fitzsimmons,*
  805 F.2d 682 (7th Cir. 1986) ................................................... 2, 3

*Shaw v. Delta Air Lines, Inc.,*
  463 U.S. 85 (1983) ....................................................................... 2

*Starbucks Corp. v. McKinney,*
  602 U.S. 339 (2024) ................................................................... 51

*Texas v. Seatrain Int'l, S.A.,*
  518 F.2d 175 (5th Cir. 1975) ................................................... 46

*Thomas v. Whitney,*
  57 N.E. 808 (Ill. 1900) .............................................................. 30

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ................................................................... 49

*United States v. Texas,*
  599 U.S. 670 (2023) ............................................................. 49, 51

*VanDerStok v. Garland,*
  86 F.4th 179 (5th Cir. 2023),
  *cert. granted,* 144 S. Ct. 1390 (2024) .................................... 51

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................... 48

**Statutes:**

Administrative Procedure Act (APA):
  5 U.S.C. § 705 .......................................................................... 50, 51
  5 U.S.C. § 706 .............................................................................. 51

Employee Retirement Income Security Act of 1974 (ERISA),
  Pub. L. No. 93-406, 88 Stat. 829 ................................................... 2
    § 408, 88 Stat. at 959-64 ......................................................... 5
      29 U.S.C. § 1001(a) ........................................................ 3, 32
      29 U.S.C. § 1001(b) .............................................................. 3
      29 U.S.C. § 1002(21)(A) .............................................. 1, 22, 37
      29 U.S.C. § 1002(21)(A)(i) .................................................... 4
      29 U.S.C. § 1002(21)(A)(ii) .............................................. 3, 27
      29 U.S.C. § 1002(21)(A)(iii) ................................................. 4
      29 U.S.C. § 1003(a) .............................................................. 3
      29 U.S.C. §§ 1101-1114 ....................................................... 26
      29 U.S.C. § 1101(a)(1) ......................................................... 42
      29 U.S.C. § 1104(a)(1)(A) ..................................................... 4
      29 U.S.C. § 1104(a)(1)(A)-(B) ................................................ 4
      29 U.S.C. § 1104(a)(1)(B) ..................................................... 4
      29 U.S.C. § 1106(b)(1) ......................................................... 5
      29 U.S.C. § 1106(b)(3) ......................................................... 5
      29 U.S.C. § 1108(a) ............................................................. 5
      29 U.S.C. § 1108(b) ............................................................. 5
      29 U.S.C. § 1135 .......................................... 6, 22, 33, 45, 46

Pub. L. No. 98-532, 98 Stat. 2705 (1984) ..................................... 6

26 U.S.C. § 4975 ....................................................................... 26

26 U.S.C. § 4975(a)-(b) .............................................................. 6

26 U.S.C. § 4975(c) .............................................................. 18, 42

26 U.S.C. § 4975(c)(1) ................................................................ 5

26 U.S.C. § 4975(c)(2) .................................... 5, 6, 41, 43, 44

26 U.S.C. § 4975(c)(2)(B) ............................................................ 32

26 U.S.C. § 4975(e)(1)(B) ............................................................. 5

26 U.S.C. § 4975(e)(1)(C)-(F) ...................................................... 5

26 U.S.C. § 4975(e)(3) ...................................................... 1, 5, 44

26 U.S.C. § 4975(e)(3)(B) ...................................... 27, 37, 38

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

**Regulations:**

17 C.F.R. § 240.15l-1 .............................................................. 16

29 C.F.R. § 2510.3-21 ......................................................... 2, 11

29 C.F.R. § 2510.3-21(c)(1) ................................................... 45

29 C.F.R. § 2510.3-21(c)(1)(i) ................................................. 2

Reorganization Plan No. 4 of 1978,
43 Fed. Reg. 47,713 (Oct. 17, 1978) ..................................... 6
§ 102, 43 Fed. Reg. at 47,713-14 .................................... 6

**Rule:**

Fed. R. Civ. P. 23 ................................................................... 49

**Legislative Material:**

H.R. Rep. No. 79-1980 (1946) ............................................ 52

**Other Authorities:**

Dan. B. Dobbs, et al.,
The Law of Torts § 697 (2d ed. June 2017 Update) ..................... 27, 30, 36

40 Fed. Reg. 50,840 (Oct. 31, 1975) .......................................... 7

40 Fed. Reg. 50,842 (Oct. 31, 1975) .................................. 7, 23, 37

41 Fed. Reg. 56,760 (Dec. 29, 1976) ........................................................ 7, 8, 41

49 Fed. Reg. 13,208 (Apr. 3, 1984) .................................................................. 8

71 Fed. Reg. 5887 (Feb. 3, 2006) .................................................................. 10

81 Fed. Reg. 20,946 (Apr. 8, 2016) ................................................................. 9

81 Fed. Reg. 21,002 (Apr. 8, 2016) ................................................................. 9

81 Fed. Reg. 21,147 (Apr. 8, 2016) ............................................................... 10

85 Fed. Reg. 40,589 (July 7, 2020) ............................................................... 11

85 Fed. Reg. 82,798 (Dec. 18, 2020) ............................................................ 11

88 Fed. Reg. 75,890 (Nov. 3, 2023) .............................................................. 12

89 Fed. Reg. 32,122 (Apr. 25, 2024) ................... 1, 2, 12, 13, 14, 15, 16, 18, 20, 23, 24,
                                                              25, 28, 29, 30, 31, 32, 33, 34, 35, 36,
                                                              37, 38, 39, 40, 41, 42, 44, 45, 46, 47

89 Fed. Reg. 32,260 (Apr. 25, 2024) .......................................... 17, 18, 19, 41

89 Fed. Reg. 32,302 (Apr. 25, 2024) .......................................... 17, 19, 41, 43, 44

89 Fed. Reg. 32,346 (Apr. 25, 2024) ........................................................ 17, 18

*Implementation of 2020 Revisions to Model #275 Suitability in in Annuity
    Transactions Model Regulation (Status as of June 12, 2024)*,
    https://content.naic.org/sites/default/files/cmte-a-annuity-
    suitability-wg-state-adoption-map-model%20275.pdf.pdf ........................................ 17

NAIC Model Regulation 275, Section 6.A (Spring 2020),
    https://content.naic.org/sites/default/files/inline-files/
    MDL-275.pdf ...............................................................................16-17

NAIC Model Regulation 275, *Project History* (2020),
    https://content.naic.org/sites/default/files/model-laws-project-
    history-275.pdf ........................................................................ 17

1 George M. Turner, *Revocable Trusts* § 3.3 (5th ed.), Westlaw
    (database updated September 2024)................................................................. 30

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district courts' jurisdiction under 28 U.S.C. § 1331. ROA.24-10890.28, ¶ 19; ROA.24-40637.15, ¶ 14. The district courts entered orders staying the enforcement date of the Retirement Security Rule, 89 Fed. Reg. 32,122 (Apr. 25, 2024), and certain related regulatory amendments on July 25, 2024, and July 26, 2024. ROA.24-10890.1522; ROA.24-40637.423-24. The government timely appealed from both orders on September 20, 2024. ROA.24-10890.1538-39; ROA.24-40637.437-38. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

To protect investors in covered retirement plans, the Employee Retirement Income Security Act of 1974 (ERISA) identifies certain individuals as "fiduciar[ies]." 26 U.S.C. § 4975(e)(3); 29 U.S.C. § 1002(21)(A). ERISA's definition of a fiduciary includes individuals who "render[] investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan." 29 U.S.C. § 1002(21)(A). This Court has construed that provision as incorporating the common law understanding of a fiduciary, which the Court identified as referring to someone who forms "a relationship of trust and confidence" with investors. *Chamber of Commerce of U.S. of Am. v. U.S. Dep't of Labor*, 885 F.3d 360, 370 (5th Cir. 2018). Following this Court's guidance, in 2024 the Department of Labor promulgated a regulatory definition that "specifically focuses on whether the investment recommendation can be appropriately treated as trust and confidence advice." 89

Fed. Reg. at 32,141. As relevant here, the regulation classifies as fiduciaries individuals who make recommendations regarding plan assets that result in compensation and satisfy four additional requirements. They must: (1) "make professional investment recommendations to investors on a regular basis as part of their business," and make those recommendations "under circumstances that would indicate to a reasonable investor" that the recommendations (2) are "based on a review of the retirement investor's particular needs or individual circumstances," (3) "reflect[] the application of professional or expert judgment," and (4) "may be relied upon by the retirement investor as intended to advance [their] best interest." 29 C.F.R. § 2510.3-21(c)(1)(i).

The question presented is whether this definition and certain accompanying exemptions reflect a permissible exercise of the Department's statutory rulemaking authority.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829, is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). Before ERISA, "federal involvement in the monitoring of pension funds . . . was minimal." *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 689 (7th Cir. 1986). ERISA's predecessor statute provided only for "limited disclosure of

information and filing of reports for … pension funds"; "primary responsibility for supervising the pension funds was left to the beneficiaries, 'reserving to the states the detailed regulations relating to insurance and trusts.'" *Id.* Congress determined that this existing regulatory system "was ineffective in monitoring and preventing fraud and other pension fund abuses." *Id.* It enacted ERISA to establish nationwide "standards . . . assuring the equitable character" and "financial soundness" of retirement benefit plans. 29 U.S.C. § 1001(a). The statutory framework included enhanced "disclosure and reporting" requirements, "standards of conduct, responsibility, and obligation for fiduciaries [to] employee benefit plans," and "appropriate remedies, sanctions, and ready access to the Federal courts." *Id.* § 1001(b).

This case concerns regulations issued to implement Titles I and II of ERISA. Title I applies to retirement plans "established or maintained" by employers or unions. 29 U.S.C. § 1003(a). To protect participants and beneficiaries in Title I plans, ERISA imposes duties and restrictions on individuals who qualify as "fiduciaries" under the statute. As relevant here, an individual is defined as a fiduciary "to the extent . . . he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii). This statutory

definition speaks "not in terms of formal trusteeship" but "in functional terms." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis omitted).[1]

Fiduciaries to Title I plans must adhere to duties of loyalty and prudence. *See* 29 U.S.C. § 1104(a)(1)(A)-(B). The former requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration. *Id.* § 1104(a)(1)(A). The latter requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

To supplement these duties, Congress also "categorically barr[ed]" such fiduciaries from engaging in certain transactions deemed "likely to injure the pension plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000) (quotation marks omitted). These prohibited transactions include "deal[ing] with the assets of the plan in his own interest or for his own account," and "receiv[ing] any consideration for his own personal account from any party dealing with such plan in

---

[1] ERISA also defines fiduciaries to include individuals to the extent they "exercise[] any discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets," 29 U.S.C. § 1002(21)(A)(i), or to the extent they "ha[ve] any discretionary authority or discretionary responsibility in the administration of such plan," *id.* § 1002(21)(A)(iii).

4

connection with a transaction involving the assets of the plan." 29 U.S.C.

§ 1106(b)(1), (3).  Given the breadth of the prohibited transaction provisions,

Congress enumerated statutory exemptions from some of them.  *Id.* § 1108(b).

Congress also gave the Department of Labor expansive authority to "grant a

conditional or unconditional exemption" from the prohibited-transaction provisions

to any fiduciary or transaction, or class of fiduciaries or transactions.  *Id.* § 1108(a).

The Department must find that the exemption is (1) "administratively feasible," (2)

"in the interests of the plan and of its participants and beneficiaries," and (3)

"protective of the rights of participants and beneficiaries of such plan."  *Id.*

Title II of ERISA, codified in the Internal Revenue Code (Code), governs the

conduct of fiduciaries to some plans not covered by Title I—including individual

retirement accounts (IRAs), which Title II created.  26 U.S.C. § 4975(e)(1)(B); *see*

ERISA, Pub. L. No. 93-406, § 408, 88 Stat. at 959-64.[2]  Title II contains a definition

of "fiduciary" that parallels the definition in Title I.  26 U.S.C. § 4975(e)(3).  Title II

does not impose specific duties of loyalty and prudence on such fiduciaries, but it

prohibits fiduciaries from engaging in conflicted transactions on the same terms as

Title I, *id.* § 4975(c)(1), (e)(3), and gives the Department the same broad authority to

issue administrative exemptions, *id.* § 4975(c)(2).  Those who violate the Code's

---

[2] Title II also covers individual retirement annuities, health savings accounts, and certain other tax-favored trusts and plans. *See* 26 U.S.C. § 4975(e)(1)(C)-(F).  For simplicity, this brief will refer to all such plans as "IRAs," and will refer to Title II of ERISA interchangeably with the Code.

prohibited-transaction provisions are subject to excise taxes collected by the Internal Revenue Service, as well as to loss remedies and equitable relief to the extent the prohibited transactions involve retirement plans covered by Title I. *Id.* § 4975(a)-(b). These penalties reflect Congress's recognition that fiduciary conflicts of interest present significant risks to investors.

The Secretary of Labor has broad and express authority to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of [Title I of ERISA]." 29 U.S.C. § 1135. "Among other things, such regulations may define accounting, technical and trade terms used in such provisions." *Id.* Congress originally vested responsibility for administering Title II's prohibited-transaction provisions in the Secretary of the Treasury. 26 U.S.C. § 4975(c)(2). In 1978, to harmonize administration of the parallel provisions in Title I and Title II, President Carter issued Reorganization Plan No. 4 of 1978, *see* 43 Fed. Reg. 47,713 (Oct. 17, 1978) (Reorganization Plan), which Congress ratified in 1984. *See* Pub. L. No. 98-532, 98 Stat. 2705 (1984). The Reorganization Plan transferred to the Department of Labor interpretive and rulemaking authority for the fiduciary definition and, with some exceptions, for the prohibited transaction provisions that apply to Title II plans. *See* Reorganization Plan § 102, 43 Fed. Reg. at 47,713-14.

### B.    Regulatory Background

**1.** Exercising its broad delegated rulemaking power under ERISA, in 1975, the Department issued regulations interpreting when a person "renders investment advice

for a fee or other compensation" for purposes of ERISA's "fiduciary" definition.  40

Fed. Reg. 50,842, 50,842 (Oct. 31, 1975) (1975 Regulation).  The regulations

established a five-part test, under which a person was deemed to "render[] investment

advice" when the person: (1) renders advice as to the value of securities or other

property, or makes recommendations as to the advisability of investing in, purchasing,

or selling securities or other property, (2) on a regular basis, (3) pursuant to a mutual

agreement, arrangement or understanding, with the plan or a plan fiduciary, (4) that

the advice will serve as a primary basis for investment decisions with respect to plan

assets, and (5) that the advice will be individualized based on the particular needs of

the plan.  *See* 40 Fed. Reg. at 50,843; *see also* 40 Fed. Reg. 50,840 (Oct. 31, 1975)

(virtually identical rule simultaneously issued by the Department of the Treasury

before the Reorganization Plan).

　　In addition to adopting this definition of a fiduciary, the Department also

exercised its statutory authority to create conditional exemptions permitting classes of

fiduciaries to engage in transactions that would otherwise have been prohibited

because of associated conflicts of interest.  Insurance companies and agents, including

plaintiff American Council of Life Insurers (ACLI), requested a ruling that "the

normal sales presentation and recommendations made by an insurance agent or

broker to a plan or plan fiduciary will not be considered to constitute the rendering of

investment advice for a fee so as to classify such agent or broker as a fiduciary."  *See*

41 Fed. Reg. 56,760, 56,761 (Dec. 29, 1976).  The Department did not adopt that

request, observing that "whether such advice constitutes 'investment advice' under these regulations and [ERISA] can be [determined] only on a case-by-case basis" and recognizing that sales commissions can, in some circumstances, constitute compensation for investment advice and therefore implicate ERISA's definition of a fiduciary. *Id.* at 56,762. Instead, the Department proposed and adopted an exemption, later designated as Prohibited Transaction Exemption (PTE) 84-24, that permits an ERISA fiduciary to receive commissions in connection with their recommendation of annuity purchases under certain conditions. *See id.* at 56,763-65; 49 Fed. Reg. 13,208 (Apr. 3, 1984); *see also Chamber of Commerce of the U.S. v. U.S. Dep't of Labor*, 885 F.3d 360, 367 (5th Cir. 2018) (PTE 84-24 "cover[s] transactions involving insurance and annuity contracts and permit[s] customary sales commissions where the terms were at least as favorable as those at arm's-length, provided for 'reasonable' compensation, and included certain disclosures." (quoting 49 Fed. Reg. at 13,211)).

**2.** The 1975 regulation was promulgated before 401(k) plans existed and IRAs were common. Since then, the market for retirement savings has undergone a dramatic shift both in the degree to which retirement investors are responsible for investing their retirement savings and in the role played by IRAs and rollovers from ERISA-covered plans. In 2016, in an effort to account for these changes, the Department finalized a new regulation that replaced the 1975 definition of a fiduciary, established two new associated PTEs, and amended other existing PTEs. The 2016

8

rulemaking comprised a package of seven different rules, *see Chamber*, 885 F.3d at 363, falling into three main categories:

*First*, the Department revised the definition of "fiduciary" under ERISA and the Code, eliminating several of the requirements of the 1975 regulation. *See* 81 Fed. Reg. 20,946 (Apr. 8, 2016). Under the 2016 rule, a person qualified as a fiduciary when making recommendations to retail investors whenever they "[d]irect[ed] . . . advice to a specific advice recipient" regarding the "advisability of a particular investment . . . decision." *Id*. Because the 2016 definition reached some advice that the Department believed Congress did not intend to identify as fiduciary advice, the Department also created certain carveouts to the scope of the new definition. *See id*. at 20,948.

*Second*, the Department promulgated two additional exemptions, including the Best Interest Contract Exemption (BICE), which allowed fiduciaries to receive conflicted income only if they adhered to certain conditions, including signing a written contract with customers that were IRA holders or participants in a plan not covered by Title I of ERISA. That contract had to contain specified provisions, and exposed financial institutions and advisers to suits for breach of contract if those provisions were violated. *See* 81 Fed. Reg. 21,002 (Apr. 8, 2016). The contract also could not include provisions that are commonly used to limit liability, such as arbitration agreements or waivers of the ability to participate in class actions. *Id*.

9

*Third*, given that the BICE would be available to all annuities and many other products, the Department amended existing exemptions, including PTE 84-24, 71 Fed. Reg. 5887 (Feb. 3, 2006), which had previously provided an exemption for sales of insurance and annuity contracts. *See* 81 Fed. Reg. 21,147 (Apr. 8, 2016). The Department determined that PTE 84-24 should be available for the receipt of commissions for IRA and plan transactions only in connection with recommendations involving "Fixed Rate Annuity Contract[s]," defined to include only traditional fixed annuities, and to exclude variable annuities (which are regulated as securities) and fixed indexed annuities (which are more complex than traditional fixed annuities). *See id.* at 21,176-77. As a result, fiduciaries providing advice with respect to many annuity products could no longer rely on PTE 84-24 but instead needed to use the BICE if they wished to be exempted from the otherwise applicable prohibited transaction provisions.

Although several federal courts rejected challenges to the 2016 fiduciary rule, *see Market Synergy Grp, Inc. v. U.S. Dep't of Labor*, 885 F.3d 676 (10th Cir. 2018); *National Ass'n for Fixed Annuities v. Perez*, 217 F. Supp. 3d 1, 23 (D.D.C. 2016), in 2018, this Court vacated the 2016 rule, including the related exemptions, *see Chamber*, 885 F.3d at 360. The Court held that ERISA must be interpreted in light of common law sources describing a fiduciary as someone who forms "relationship[s] of trust and confidence" with investors. *Id.* at 369. Applying that understanding, the Court determined that the definition adopted by the 2016 rule swept more broadly than ERISA permits. *See*

*id.* at 376.  For instance, the Court faulted the rule for classifying as fiduciaries "salespeople in ordinary buyer-seller transactions."  *Id.* at 377.  For similar reasons, the Court regarded the amended exemptions accompanying the 2016 rule as improper attempts to "blunt" what it viewed as an overbroad definition of a fiduciary.  *Id.* at 381.

**3.** In response to this Court's decision, in July 2020, the Department issued a technical amendment to 29 C.F.R. § 2510.3-21, formally removing the 2016 language and reinserting the 1975 regulation's text.  85 Fed. Reg. 40589 (July 7, 2020).  It also proposed an exemption that took into consideration this Court's *Chamber* decision, public correspondence and comments received by the Department since February 2017, and informal industry feedback seeking an administrative class exemption for otherwise-prohibited transactions.  *See* 85 Fed. Reg. 82,798, 82,799 (Dec. 18, 2020). The Department finalized this exemption as PTE 2020-02 in December 2020.  In the preamble, the Department also "set[] forth the Department's final interpretation of the [1975] five-part test of investment advice fiduciary status for purposes of this exemption, and provide[d] the Department's views on when advice to roll over Title I Plan assets to an IRA will be considered fiduciary investment advice under Title I and the Code."  *Id.*[3]

---

[3] A district court subsequently vacated later guidance issued by the Department expanding on its interpretation of the "regular basis" element of the 1975 rule in the 2020 interpretive rule.  *See American Sec. Ass'n. v. U.S. Dep't of Labor*, No. 8:22-cv-330-

### C.    The Retirement Security Rule

**1.** At issue here is a revised regulatory definition of a fiduciary that implements "the *Chamber* opinion's emphasis on relationships of trust and confidence." 89 Fed. Reg. at 32,160.  In November 2023, the Department issued a Notice of Proposed Rulemaking "propos[ing] [an] amendment to the regulation defining when a person renders 'investment advice for a fee or other compensation, direct or indirect' with respect to any moneys or other property of an employee benefit plan, for purposes of the definition of a 'fiduciary' in the Employee Retirement Income Security Act of 1974." 88 Fed. Reg. 75,890, 75,890 (Nov. 3, 2023).  In separate notices, the Department also proposed amendments to certain "existing administrative exemptions from the prohibited transaction rules applicable to fiduciaries." *Id.*

Following a comment period and a public hearing, the Department finalized the Retirement Security Rule.  In the final Rule, "[t]he Department . . . made certain changes and clarifications . . . in response to public comments on the proposal and the testimony presented at the public hearings." 89 Fed. Reg. at 32,132.  For example, the Department "narrow[ed] the contexts in which a covered recommendation will constitute ERISA fiduciary investment advice." *Id.* at 32,123.  The Rule likewise

---

VMC-CPT, 2023 WL 1967573, at *14-19 (M.D. Fla. Feb. 13, 2023), *appeal dismissed*, No. 23-11266-F, 2023 WL 4503923 (11th Cir. May 17, 2023).  Another challenge to the 2020 interpretive rule is currently pending in the Northern District of Texas. *See Federation of Ams. For Consumer Choice, Inc. v. U.S. Dep't of Labor*, No. 3:22-CV-00243-K-BT, 2023 WL 5682411 (N.D. Tex. June 30, 2023) (Magistrate Judge's Findings, Conclusions, and Recommendations).

"ma[de] clear that the test for fiduciary status is objective" and that "the mere provision of investment information or education, without an investment recommendation, is not advice within the meaning of the rule." *Id.*

The Rule's definition of a fiduciary "specifically focuses on whether the investment recommendation can be appropriately treated as trust and confidence advice." 89 Fed. Reg. at 32,141. To that end, the Rule articulates two ways that an investment professional "renders 'investment advice' with respect to moneys or other property" of a plan or IRA—and thus is a fiduciary under ERISA. First, an investment professional acts as a fiduciary if, in making recommendations regarding plan assets that result in compensation, the professional "represents or acknowledges that they are acting as a fiduciary under Title I of ERISA, Title II of ERISA, or both, with respect to the recommendation." *Id.* at 32,256-57.

Second, the Rule also identifies as fiduciaries individuals who make recommendations regarding plan assets that result in compensation and satisfy four additional requirements. They must: (1) "make professional investment recommendations to investors on a regular basis as part of their business," and make those recommendations "under circumstances that would indicate to a reasonable investor" that the recommendations (2) are "based on a review of the retirement investor's particular needs or individual circumstances," (3) "reflect[] the application of professional or expert judgment," and (4) "may be relied upon by the retirement investor as intended to advance [their] best interest." 89 Fed. Reg. at 32,256.

These requirements are "intended to define, objectively, when a retirement investor would reasonably place their trust and confidence in the advice provider." 89 Fed. Reg. at 32,152. Indeed, the Rule discusses "trust and confidence" advice on 80 occasions and cites this Court's decision in *Chamber* more than 40 times. For example, in response to *Chamber*'s concern about treating "ordinary buyer and seller" interactions as fiduciary advice, 885 F.3d at 377, the Rule clarified that in the absence of indicia of a relationship of trust and confidence, "mere sales recommendations" do "not result in ERISA fiduciary status," 89 Fed. Reg. at 32,138. Likewise, in response to *Chamber*'s concern that "one-time IRA rollover or annuity transactions" "ordinarily" do not involve a "relationship of trust and confidence," 885 F.3d at 380, the Rule stated that recommendations to engage in such transactions are only "appropriately treated as fiduciary investment advice" when the definition's many requirements are present, 89 Fed. Reg. at 32,144.

**2.** In addition to implementing this Court's decision in *Chamber*, the revised fiduciary definition also advances ERISA's purpose of "protect[ing] the interests of the retirement investors." 89 Fed. Reg. at 32,122. The "growth of participant-directed investment arrangements and IRAs" has put the onus on individuals to make their own investment decisions. *Id.* at 32,125. At the same time, the financial marketplace has grown "increasingly complex" and now features investment options that "vary widely with respect to return potential, risk characteristics," and a host of other factors. *Id.* at 32,180. To take one example, "fixed indexed annuities"—an

increasingly popular investment option that has also grown in complexity in recent years—can expose investors to "considerably more downside than they expect[]." *Id.* at 32,188, 32,139.   In combination, these circumstances render retirement investors "vulnerable" to individuals who hold themselves out as acting as trusted advisors but who in fact prioritize their own financial interests. *Id.* at 32,179.

The revised definition closes this "important gap." 89 Fed. Reg. at 32,122. Before the revision, there were "many situations where the retirement investor reasonably expect[ed] that their relationship with the advice provider [wa]s one in which the investor c[ould] (and should) place trust and confidence in the recommendation, yet which [we]re not covered by the 1975 regulation." *Id.* at 32,132. For instance, under the 1975 regulation's "regular basis" requirement, a financial professional who established a relationship of trust and confidence by providing advice "for many years . . . regarding the investor's non-retirement accounts" would not qualify as a fiduciary "with respect to a recommendation to roll over" a workplace retirement plan to an IRA "if that is the first instance of advice with respect to that plan account." 89 Fed. Reg. at 32,136.  This and other scenarios not covered by the 1975 regulation "expose[d] investors to higher costs, lower returns, and greater risk." *Id.* at 32,133.  The Retirement Security Rule addresses those problems by "ensur[ing] that retirement investors' reasonable expectations are honored when they receive advice from financial professionals who hold themselves out as trusted advice providers." *Id.* at 32,122.

Other regulators have identified the same market conditions as presenting risks to investors and have taken action. In 2019, the Securities and Exchange Commission (SEC) finalized a regulatory package relating to conduct standards for broker-dealers and investment advisers. The SEC actions included the issuance of a rule entitled Regulation Best Interest, which establishes that when making certain recommendations to retail customers, broker-dealers must adhere to a best-interest standard. *See* 89 Fed. Reg. at 32,124-25 & nn.18–20; *see also* 17 C.F.R. § 240.15l-l ("A broker [or] dealer . . . when making a recommendation of any securities transaction or investment strategy involving securities (including account recommendations) to a retail customer, shall act in the best interest of the retail customer at the time the recommendation is made, without placing the financial or other interest of the broker, dealer, or natural person who is an associated person of a broker or dealer making the recommendation ahead of the interest of the retail customer.").

Similarly, in 2020, the National Association of Insurance Commissioners ("NAIC"), a standard-setting organization created and governed by state chief insurance regulators, updated its Suitability in Annuity Transactions Model Regulation. This model regulation now states that "when making a recommendation of an annuity," agents and insurers "shall act in the best interest of the consumer under the circumstances known at the time the recommendation is made, without placing the producer's or the insurer's financial interest ahead of the consumer's interest." NAIC Model Regulation 275, Section 6.A (Spring 2020),

https://content.naic.org/sites/default/files/inline-files/MDL-275.pdf; *see also* NAIC

Model Regulation 275, *Project History* at 1-2 (2020),

https://content.naic.org/sites/default/files/model-laws-project-history-275.pdf

(explaining that NAIC's new best interest standard was intended to be "more than the

model's current suitability standard, but . . . not a fiduciary standard").  "Best interest"

is measured by "satisf[ying] . . . obligations regarding care, disclosure, conflict of

interest and documentation."  NAIC Model Regulation 275, Section 6.A.  As of June

2024, versions of the model rule had been adopted by at least 45 states.  *See*

*Implementation of 2020 Revisions to Model #275 Suitability in in Annuity Transactions Model*

*Regulation [Status as of June 12, 2024]* (June 17, 2024), https://content.naic.org/sites/

default/files/cmte-a-annuity-suitability-wg-state-adoption-map-model%20275.pdf.

pdf.

       **3.** At the same time that the Department finalized the revised definition of a

fiduciary, it also amended a number of administrative exemptions from the

transaction prohibitions, including PTE 2020-02 and PTE 84-24.  *See* Amendment to

PTE 2020-02, 89 Fed. Reg. 32,260 (Apr. 25, 2024); Amendment to PTE 84-24, 89

Fed. Reg. 32,302 (Apr. 25, 2024); Amendment to PTEs, 89 Fed. Reg. 32,346 (Apr. 25,

2024).  As amended, PTE 2020-02 "requires financial institutions and investment

professionals relying on the exemption" to satisfy a number of conditions, including

acknowledging their fiduciary status, adhering to impartial conduct standards, and

adopting policies designed to ensure compliance with those standards.  89 Fed. Reg. at

32,346 n.3. This PTE is markedly broader than prior versions of the exemption (including the version at issue in *Chamber*) and is available for recommendations regarding virtually any investment product in the marketplace. The amended version of PTE 84-24 involves "conditions similar to the amended PTE 2020-02" but focuses on "transactions with independent insurance agents," and does not require the insurer to acknowledge fiduciary status with respect to these independent agents. *Id.* at 32,346 n.4. The remaining amendments (to PTEs 75-1, 77-4, 80-83, 83-1, and 86-128) establish that parties seeking an exemption from the transaction prohibitions must satisfy either PTE 2020-02 or PTE 84-24. *Id.* at 32,347.

In combination, these amendments are designed to standardize and simplify the administrative exemptions available to fiduciaries who seek to conduct transactions Congress prohibited. "[R]ather than look to an assortment of different exemptions with different conditions," fiduciaries other than independent insurance agents who engage in prohibited transactions "will generally expected to rely solely on amended PTE 2020-02." 89 Fed. Reg. at 32,176. As the Department has emphasized, no fiduciary is required to invoke the administrative exemptions. *See* 89 Fed. Reg. at 32,262. Instead, they can refrain from engaging in the prohibited transactions identified by Congress. *See* 26 U.S.C. § 4975(c).

**4.** The new fiduciary definition was scheduled to take effect on September 23, 2024. *See* 89 Fed. Reg. at 32,171. The amendments to PTE 2020-02 and PTE 84-24 were scheduled to take effect following a one-year phase-in period beginning on

September 23, 2024.  *See id.*  During the phase-in period, parties could receive compensation under the amended exemptions, provided that they complied with the impartial conduct standards and the fiduciary-acknowledgment requirement.  89 Fed. Reg. at 32,299; 89 Fed. Reg. at 32,344.

### C.    Prior Proceedings

**1.** Two sets of plaintiffs challenged the Retirement Security Rule in the Eastern and Northern Districts of Texas.  Plaintiffs in the first case include the Federation of Americans for Consumer Choice, Inc. (FACC), a trade association of insurance agents and entities selling annuities, among other products, as well as certain individual insurance agents.  ROA.24-40637.13-14.  Plaintiffs in the second case include ACLI, a trade association representing life insurance agents and entities, as well as various other trade associations representing similar individuals and entities.  ROA.24-10890.25-28.  Both sets of plaintiffs brought claims under the Administrative Procedure Act (APA), arguing that the Rule is inconsistent with ERISA and is arbitrary and capricious.  ROA.24-40637.401.  Plaintiffs moved to preliminarily enjoin or stay the effective date of the Rule and certain regulatory amendments.  ROA.24-40637.102; ROA.24-10890.123-24.[4]

**2.** The *FACC* district court issued an order staying the effective date of the Retirement Security Rule and the amendment to PTE 84-24.  ROA.24-40637.423-24.

---

[4] Two trade associations representing financial advisers and broker-dealers subsequently intervened in the *ACLI* case as well.

a. With respect to plaintiffs' likelihood of success on the merits, the district court concluded that the Rule "suffers from many of the same problems" as the 2016 rule that *Chamber* invalidated. ROA.24-40637.383. The court did not address the new requirements included in the revised definition of a fiduciary, including that the advice provider hold itself out in such a way as to convey to a reasonable investor that the advice "may be relied upon" as "intended to advance" the investor's "best interest." 89 Fed. Reg. at 32,141. Instead, the court assumed that, like the 2016 rule in *Chamber*, the Rule challenged here "expands the definition of 'investment advice fiduciary' to include nearly any insurance agent or stockbroker who interacts with an IRA investor." ROA.24-40637.416-17 (citing *Chamber*, 885 F.3d at 382). For instance, the court believed that the Rule treats as fiduciary advice all "one-time recommendations to roll over assets from a Title I plan to an IRA." ROA.24-40637.408. Relying on this understanding of the Rule, the court concluded that it "capture[s] transactions that do not satisfy" the "trust and confidence" standard articulated in *Chamber* and that it therefore conflicts with ERISA. ROA.24-40637.408 (quotation marks omitted). The court reasoned that this conclusion was bolstered by the major questions doctrine. ROA.24-40637.413-14.

For similar reasons, the district court further held that the Department acted arbitrarily and capriciously in amending PTE 84-24. It concluded that the Retirement Security Rule impermissibly "expanded the definition of [an] investment advice fiduciary" and that PTE 84-24 leverages that definition to impose obligations on

individuals who should not be classified as fiduciaries in the first place.  ROA.24-40637.411-12.  The court also believed that the amended exemption would expose regulated individuals to breach-of-fiduciary duty liability akin to the contractual liability created by the rule at issue in *Chamber*.  ROA.24-40637.417.

**b.** Addressing the remaining stay factors, the district court determined that plaintiffs had demonstrated irreparable harm based on their assertions that the Retirement Security Rule would subject them to compliance burdens.  ROA.24-40637.417-19.  It also determined that the balance of equities and the public interest weighed in favor of a stay, in light of its conclusions that plaintiffs had demonstrated a concrete threatened injury and a likelihood of success on the merits.  ROA.24-40637.419-20.  The court further rejected the government's argument that any relief should be limited to the parties before the court and issued a universal stay of the effective date of the rule and the amendment to PTE 84-24.  ROA.24-40637.421-24.

**3.** The following day, the *ACLI* court issued an order that likewise stayed the effective date of the Retirement Security Rule and the amendment to PTE 84-24.  The order also stayed the effective date of the other amended exemptions accompanying the Rule, which were not addressed by the *FACC* court.  *See* ROA.24-10890.1511.  With respect to the merits, the *ACLI* court "fully agree[d]" with the *FACC* court's analysis and "adopt[ed] that reasoning."  ROA.24-10890.1513.  It also agreed that plaintiffs had demonstrated irreparable harm and that the balance of equities and the public interest supported a stay.  ROA.24-10890.1515-19.  And it rejected the

21

government's contention that the court should tailor relief to the parties, stating that the Rule is unlawful for a broad class of affected investment professionals, that the Department had sought to establish a uniform definition, and that letting the Rule go into effect may cause nonparties to exit the industry.  ROA.24-10890.1519-21.  It therefore issued a stay of the effective date of the Rule and the exemption amendments as a whole during the pendency of the litigation and any appeal.  ROA.24-10890-1522.[5]  The stay has thus deprived fiduciaries of the option of taking advantage of the relatively broad exemptions embodied in amended PTEs 2020-02 and 84-24.

## SUMMARY OF ARGUMENT

ERISA protects investors in covered retirement plans by identifying certain individuals as plan fiduciaries.  Included within the statutory definition of a fiduciary are individuals who "render[] investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan."  29 U.S.C. § 1002(21)(A).  Congress expressly authorized the Department of Labor to "prescribe . . . regulations" to further "define" this and other "accounting, technical and trade terms used in" the statute.  29 U.S.C. § 1135.  Consistent with that authority, the Department has promulgated regulatory definitions of the term

---

[5] Because the *ACLI* district court "fully agree[d]" with the *FACC* court's merits analyis and "adopt[ed]" its reasoning, this brief generally cites the *FACC* court's opinion.  ROA.24-10890.1513.

fiduciary since shortly after ERISA's enactment almost half a century ago. *See, e.g.,* 40 Fed. Reg. 50,842.

**I.** The Retirement Security Rule's definition of a fiduciary comports with ERISA's text and with this Court's construction of that text. *See Chamber of Commerce of U.S. v. U.S. Dep't of Labor*, 885 F.3d 360 (5th Cir. 2018). In *Chamber*, the Court determined that the relevant ERISA provision must be interpreted in light of common law sources. *Id.* at 372. Drawing on those sources, the Court understood a fiduciary as someone who forms a "relationship of trust and confidence" with investors. *Id.* at 371. The Court emphasized that whether an individual qualifies as a fiduciary depends on how they "act," and not on their formal job title. *Id.* at 377.

Following *Chamber*'s guidance, the definition at issue here "specifically focuses on whether the investment recommendation can be appropriately treated as trust and confidence advice." 89 Fed. Reg. at 32,141. In particular, the Rule identifies as fiduciaries persons who regularly make investment recommendations as part of their business, provide investors with expert advice tailored to their individual circumstances, and engage in conduct that would persuade a reasonable investor that the advice "may be relied upon" "as intended to advance" the investor's "best interest." *Id.* at 32,122. By capturing only those individuals whose actions would obtain a reasonable investor's trust, this definition translates *Chamber*'s trust-and-confidence standard into an objective, administrable test.

Although the district courts repeatedly invoked *Chamber*, neither undertook the analysis that *Chamber* requires. Both courts mistakenly assumed that the Retirement Security Rule treats as a fiduciary "nearly any insurance agent or stockbroker who interacts with an IRA investor." ROA.24-40637.417. But neither court accounted for the Rule's requirements, including the requirement that an individual provide expert advice tailored to the investor's particular circumstances and the requirement that an individual's conduct convince a reasonable investor that the advice is intended to serve that investor's best interest. The courts never explained why these limits would be insufficient to implement *Chamber*'s trust-and-confidence standard. Nor did the courts acknowledge that the new definition stands in stark contrast to the 2016 rule, which treated any direct recommendation to a retail investor as fiduciary advice.

This failure to grapple with the Rule's limits distorted many aspects of the district courts' analysis. For example, the courts' rejection of certain amended exemptions accompanying the fiduciary definition was premised on their mistaken view that the definition was little changed from the one at issue in *Chamber*, notwithstanding the significant new limits introduced by the Department. For similar reasons, the courts erred in concluding that the definition, which implements this Court's statutory interpretation and which is "far narrower" than the definition considered in *Chamber*, implicates the major questions doctrine. 89 Fed. Reg. at 32,141.

24

Other aspects of the district courts' decisions are likewise at odds with *Chamber*. Although the courts faulted the Retirement Security Rule for treating some salespeople as fiduciaries, *Chamber* recognized that fiduciary status turns on a person's conduct, not their job title, and it approvingly discussed a prior regulation recognizing that salespeople count as fiduciaries in certain circumstances. Similarly, although the district courts suggested that the Department must forever adhere to a regulatory definition promulgated in 1975, that definition is "underinclusive" because it fails to encompass many individuals who serve as trusted advisers. 89 Fed. Reg. at 32,132. The revised definition extends fiduciary status to those individuals and thus more fully implements *Chamber*.

**II.** Because plaintiffs have failed to demonstrate a likelihood of success on the merits, the district court orders staying the effective date of the Retirement Security Rule and the accompanying amended exemptions should be vacated. The remaining factors—including the balance of hardships and the public interest—confirm that a stay is inappropriate. Preventing the Rule from going into effect inflicts serious harms on the government and on investors. Most importantly, the Rule protects investors from individuals who appear to have their best interests at heart yet seek to engage in transactions Congress deemed harmful. By contrast, plaintiffs' claim that they would incur compliance costs as a result of the Rule warrants little if any weight. Equity does not recognize a significant interest in obtaining investors' trust without incurring any corresponding obligation to honor that trust.

**III.** At a minimum, any relief should be limited to plaintiffs. The scope of the stays issued by the district courts—applying nationwide and to all provisions of the Rule and exemption amendments—vastly exceeded what was necessary to redress "the plaintiff[s'] particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Accordingly, this Court should vacate the district courts' stay orders or, at a minimum, narrow the scope of relief to remedy only the asserted injuries of plaintiffs.

## STANDARD OF REVIEW

This Court reviews the entry of a stay under the same standards it applies when considering the issuance of a preliminary injunction. *See Alliance for Hippocratic Med. v. U.S. Food & Drug. Admin*, 78 F.4th 210, 241-42 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024). In particular, the Court "review[s] legal conclusions *de novo* and findings of fact for clear error." *Id.*

## ARGUMENT

## I. Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits

### A. The Retirement Security Rule Is Consistent with ERISA's Text and This Court's Precedent

**1.** To protect investors in covered retirement plans, ERISA classifies certain individuals as fiduciaries and subjects them to specified safeguards. *See* 29 U.S.C. §§ 1101-1114 (Title I); 26 U.S.C. § 4975 (Title II). ERISA's definition of a fiduciary includes individuals who "render[] investment advice for a fee or other compensation,

direct or indirect, with respect to any moneys or other property of such plan." 29 U.S.C. § 1002(21)(A)(ii) (Title I); 26 U.S.C. § 4975(e)(3)(B) (Title II).

This Court has construed that provision as referring to individuals who form "relationship[s] of trust and confidence" with investors. *Chamber of Commerce of the U.S. v. U.S. Dep't of Labor*, 885 F.3d 360, 371 (5th Cir. 2018). In developing this construction, the Court cited "common law" and "financial services industry" understandings. *Id.* at 372. For example, the Court quoted a treatise defining a fiduciary as someone "who appear[s] to accept . . . an obligation to act in a position of trust or confidence for the benefit of another" or "who ha[s] accepted a status or relationship understood to entail such an obligation, generating the beneficiary's justifiable expectations of loyalty." *Id.* at 370-71 (quoting Dan. B. Dobbs, et al., The Law of Torts § 697 (2d ed. June 2017 Update)). The Court similarly stated that the Securities and Exchange Commission (SEC) had long understood a fiduciary as an individual who "learn[s] the personal and intimate details of the financial affairs of clients" and thereby "cultivates a confidential and intimate relationship." *Id.* at 374 (quoting *Hughes*, Exchange Act Release No. 4048, 1948 WL 29537, at *4, *7 (Feb. 18, 1948)). Based on these and similar sources, *Chamber* understood a fiduciary as someone who "act[s] as an impartial or trusted adviser." *Id.* at 382.

Under this Court's precedent, whether an individual qualifies as a fiduciary thus depends not on their formal job title, but on their conduct. As the Supreme Court has emphasized, ERISA's text describes a fiduciary "in functional terms." *Mertens v.*

*Hewitt Assocs.*, 508 U.S. 248, 262 (1993). This Court has accordingly explained that

ERISA's safeguards "apply to those who *act* as fiduciaries"—by serving or appearing

to serve as trusted advisers—"regardless whether they are *named* fiduciaries." *Chamber*,

885 F.3d at 377 (emphasis added).

**2.** The Retirement Security Rule "is fully consistent with the *Chamber* opinion's

emphasis on relationships of trust and confidence." 89 Fed. Reg. at 32,160.

Both parts of the Rule's fiduciary definition capture individuals who serve as

trusted advisers. The first part encompasses individuals who "represent[] or

acknowledge[] that they are acting as a fiduciary under Title I of ERISA, Title II of

ERISA, or both, with respect to the recommendation." 89 Fed. Reg. at 32,256-57.

By purporting to act as fiduciaries subject to Congressionally-created safeguards, those

individuals "generat[e] the beneficiary's justifiable expectations of loyalty," and thus fit

squarely within *Chamber*'s understanding of a fiduciary. 885 F.3d at 371 (quotation

marks omitted).

The second part of the Retirement Security Rule's definition likewise "focuses

on whether [an] investment recommendation can be appropriately treated as trust and

confidence advice." 89 Fed. Reg. at 32,141. To qualify as a fiduciary under that part

of the definition, an individual must make recommendations regarding plan assets that

result in compensation and satisfy four additional requirements. They must (1)

"make[] professional investment recommendations to investors on a regular basis as

part of their business," and make those recommendations "under circumstances that

would indicate to a reasonable investor" that the recommendations (2) are "based on review of the retirement investor's particular needs or individual circumstances," (3) "reflect[] the application of professional or expert judgment," and (4) "may be relied upon by the retirement investor as intended to advance [their] best interest." *Id.* at 32,256.

Those requirements translate *Chamber*'s trust-and-confidence standard into an objective, administrable test. Under the requirements, a fiduciary is someone who not only provides expert advice tailored to an investor's particular financial situation, but who also conveys by their conduct that their advice "may be relied upon" as "intended to advance" the investor's "best interest." 89 Fed. Reg. at 32,256. Thus, the Rule only captures individuals whose conduct would elicit a reasonable investor's "trust and confidence"—as *Chamber* contemplated. 885 F.3d at 371.

The requirement that an advice provider convey that their advice is meant to serve the investor's best interests is especially important. As the Rule explains, that requirement "is intended to define, objectively, when a retirement investor would reasonably place their trust and confidence in the advice provider." 89 Fed. Reg. at 32,152. By definition, firms and investment professionals who hold themselves out as providing expert individualized recommendations that are intended to advance the investor's best interest in the manner set forth in the Rule serve as "trusted adviser[s]" and thus as fiduciaries under this Court's interpretation. *Chamber*, 885 F.3d at 382.

Many of the authorities that *Chamber* invoked in elaborating the trust-and-confidence standard confirm that the Rule appropriately implements that standard. One treatise this Court cited identifies as probative evidence of fiduciary status a "plaintiff's reasonable expectations based on the defendant's apparent acceptance of the plaintiff's confidence." Dobbs et al., *supra*, § 697. Another cited treatise describes the term fiduciary as "embrac[ing] . . . those informal relations which exist wherever one man trusts in and relies on another." 1 George M. Turner, *Revocable Trusts* § 3.3 (5th ed.), Westlaw (database updated September 2024) (quoting *Thomas v. Whitney*, 57 N.E. 808, 810 (Ill. 1900)). And the SEC materials discussed in *Chamber* similarly identify as fiduciaries those individuals who "represent[]" that they will "make only such [investment] recommendations as would serve [investors'] interests." *Hughes*, 1948 WL 29537, at *7. Each of these definitions focuses on whether a reasonable investor would rely on the potential fiduciary's investment advice. The Rule addresses the same class of individuals and does so in a precise and administrable way.

**3.** The Retirement Security Rule's definition of a fiduciary therefore bears no resemblance to the definition at issue in *Chamber*. The 2016 definition generally treated all investment recommendations to investors as fiduciary advice and omitted many of the limits discussed above, including the requirement that advice providers regularly make investment recommendations and the requirement that they induce investors to believe that their advice "may be relied upon" "as intended to advance the retirement investor's best interest." 89 Fed. Reg. at 32,256. In the absence of

those limits, *Chamber* concluded that the prior definition was not confined to individuals who satisfy the trust-and-confidence standard and instead encompassed "virtually all financial and insurance professionals who do business with ERISA plans and IRA holders," without regard to the nature of their relationship. 885 F.3d at 366.

Because the present definition is grounded in the trust-and-confidence standard, its scope "is far narrower than the previous rulemaking." 89 Fed. Reg. at 32,141. For instance, *Chamber* emphasized that the prior rule generally treated as fiduciaries "financial salespeople" who recommend "one-time IRA rollover or annuity transactions." 885 F.3d at 380. The Court viewed that as problematic because it believed that salespeople do not "ordinarily" form "relationship[s] of trust and confidence with prospective purchasers." *Id.*

In contrast to the 2016 definition, the Retirement Security Rule only treats salespeople as fiduciaries in the specific circumstances set forth in the Rule, which are designed to ensure that the salesperson has created a trust and confidence relationship. Consistent with *Chamber*, the Rule clarifies that merely making a "sales pitch," without meeting the Rule's requirements, does not transform a salesperson or insurance agent into a fiduciary. 89 Fed. Reg. at 32,155. Only in specific situations—namely, those that would indicate to a reasonable investor that the recommendation "was individualized, the salesperson considered the investor's particular circumstances, applied professional judgment to the investor's particular needs and circumstances" and "was providing a recommendation intended to advance the best

interest of the investor"—would a salesperson qualify as a fiduciary under the Department's definition. *Id.*

In addition to comporting with ERISA's text as construed by this Court, the Retirement Security Rule also advances the statute's "broadly protective purposes." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993).  By identifying fiduciaries and subjecting them to various safeguards, Congress sought to shield retirement investors from the dangers posed by conflicted advice.  That Congress aimed to protect investors is apparent in ERISA's enacted statement of purpose, *see* 29 U.S.C. § 1001(a), and in the statutory provision at issue here, which permits exemptions from the transaction prohibitions only if they do not threaten "the interests of the plan and of its participants and beneficiaries," 26 U.S.C. § 4975(c)(2)(B).  The Rule furthers those objectives because it prevents persons who win investors' trust by holding themselves out as more than mere salespersons from betraying that trust.

The Rule's investor protections are particularly critical today.  As *Chamber* recognized, "the use of participant-directed IRA plans has mushroomed," putting the onus on individuals (rather than employers and professional money managers) to make investment decisions.  885 F.3d at 365.  At the same time, the financial marketplace has grown "increasingly complex," presenting investors with options that "vary widely with respect to return potential, risk characteristics," and a host of other factors.  89 Fed. Reg. at 32,180.  For example, "fixed indexed annuities" are a popular

investment option with "complex features" that make it "very easy for investors to purchase products that have very different risks and benefits" than they expect. *Id.* at 32,188, 139.   Under these circumstances, investors are particularly "vulnerable" to individuals who purport to serve as trusted advisers but who in fact prioritize their own interests over investors'. *Id.* at 32,179.  As explained, the Rule helps address that problem by requiring that those who obtain investors' "trust and confidence" abide by the safeguards that Congress deemed appropriate. *Chamber*, 885 F.3d at 369.

For these reasons, the Retirement Security Rule falls readily within the Department's statutory authority to define the term fiduciary.  Congress "expressly delegate[d]" to the agency the power "to give meaning to" that statutory term. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (quotation marks omitted).  In particular, ERISA vests the agency with authority to "prescribe . . . regulations" to "define" all "accounting, technical and trade terms" used in the statute.  29 U.S.C. § 1135.  The definition here, which is grounded in ERISA's text and in this Court's construction of the text, permissibly exercises that delegated authority.

## B.    The District Courts' Approach Misunderstands This Court's Precedent and the Rule Itself

The district court decisions reflect two principal errors.  First, the courts glossed over the Retirement Security Rule's limits and thus significantly overstated its scope.  Second, although the courts repeatedly invoked this Court's decision in

*Chamber*, their analysis is at odds with that decision in multiple respects. These errors require reversal.

**1.** The district courts' conclusions are premised on a fundamental misunderstanding of the Rule. The courts believed that the Rule "expands the definition of 'investment advice fiduciary' to include nearly any insurance agent or stockbroker who interacts with an IRA investor." ROA.24-40637.416-17 (citation omitted). On that basis, the courts characterized the Rule's definition as the "same" or "similar" to the definition that *Chamber* rejected. ROA.24-40637.383.

That understanding ignores the Rule's many limits. As discussed, the Rule "is far narrower" than the one challenged in *Chamber*. 89 Fed. Reg. at 32,141. Most notably, the Rule identifies as fiduciaries only those who either represent that they act as fiduciaries or who otherwise convey that investors may "rel[y]" on their advice "as intended to advance [those investors'] best interest" and meet the other elements of the definition, all of which are aimed at individualized expert advice. *Id.* at 32,256. Neither district court analyzed those requirements or provided any explanation as to why they would not capture individuals who satisfy *Chamber*'s trust-and-confidence standard.

The district courts' disregard for the Rule's limits is apparent in their discussion of "onetime recommendations to roll over assets from a Title I plan to an IRA." ROA.24-40637.408. Citing the Rule, one court suggested that the Department classified all such recommendations as fiduciary advice. *See* ROA.24-40637.408 (citing

89 Fed. Reg. at 32,144).  But the court did not discuss the key sentence on the cited page, which clarifies that advice regarding a rollover decision is covered only if "the other provisions of the final rule are satisfied."  89 Fed. Reg. at 32,144.  In other words, a rollover recommendation qualifies as fiduciary advice only when it addresses an investor's particular financial situation and is reasonably understood as intended to serve the investor's best interests.

The district courts never explained why rollover recommendations provided in those limited circumstances would not constitute "trusted advi[ce]" as defined by *Chamber*. 885 F.3d at 382.  As the Rule explains, deciding to "engage in a rollover transaction [is] among the most, if not the most, important financial decisions that plan participants and beneficiaries, and IRA owners and beneficiaries[,] are called upon to make."  89 Fed. Reg. at 32,144.  When an advice provider recommends such a transaction, persuades the investor that the recommendation is intended to serve their best interest, and meets the Rule's other requirements, that highly consequential recommendation "is appropriately treated as fiduciary advice."  *Id.*

This failure to account for the Rule's limits is also illustrated by the district courts' mistaken assumption (*see, e.g.*, ROA.24-40637.409-10) that the Rule generally categorizes salespeople as fiduciaries.  As explained above, the Department expressly states that "merely making a sales pitch" does not qualify as fiduciary advice.  89 Fed. Reg. at 32,154.  That result follows from the Rule's requirements, which treat as "fiduciary investment advice" only those recommendations that come from a person

who regularly makes recommendations as part of their business, are "individualized,"
that apply "professional judgment to the investor's particular needs," and that a
reasonable investor would view as "intended to advance the[ir] best interest." *Id.* at
32,155.

To the extent the district courts suggested (ROA.24-40637.410) that
salespeople are categorically exempt from classification as fiduciaries, that suggestion
contradicts *Chamber.* In that case, the Court explained that an individual's status as a
fiduciary turns not on their formal job title, but on whether they "*act* as [a]
fiduciar[y]." 885 F.3d at 377 (emphasis added). The authorities on which *Chamber*
relied similarly emphasize that fiduciary status is not limited to particular "formalized"
relationships and instead encompasses all circumstances "where the [investor] reposes
special trust and confidence in the [advice provider]." Dobbs et al., *supra*, § 697. The
Rule properly implements *Chamber* by identifying just those circumstances in which
salespeople act as "trusted adviser[s]" and thus fall within this Court's understanding
of a fiduciary. *Id.* at 382.

That salespeople sometimes act as fiduciaries is confirmed by the factual record
before the Department. At a public hearing regarding the Rule, a witness representing
a large association of insurance professionals explained that he typically forms a
"long-term relationship" with clients in which he "get[s] to know the client," "get[s] to
know their needs, their objectives, [and] their risk tolerance," and then suggests "the
best products and services . . . to meet those needs." 89 Fed. Reg. at 32,135. The

witness, a "financial services provider" who was "paid on commission," stated that "he did have a relationship of trust and confidence with his customers" and saw himself as "[a]n advisor and somebody who helps and serves my clients, that's my highest ethic and creed." *Id.* And some of the plaintiffs in this case similarly describe themselves (or the members they represent) not as salespeople, but as "advisors." *See* ROA.24-10890.21-22. As these examples demonstrate, salespeople sometimes obtain investors' trust and are thus appropriately classified as fiduciaries.

There is likewise no basis for the district courts' related determination that sales commissions never qualify as "compensation" "for" investment advice, a prerequisite for fiduciary status under the relevant ERISA provision. ROA.24-40637.405-06 (quoting 29 U.S.C. § 1002(21)(A)) (citing 26 U.S.C. § 4975(e)(3)(B)). Congress defined this compensation requirement broadly, to encompass any "fee or other compensation, direct or indirect." 26 U.S.C. § 4975(e)(3)(B). Since 1975, the Department has accordingly recognized that compensation for investment advice "may include" sales commissions under the right circumstances. *Chamber*, 885 F.3d at 373 (first quotation from 40 Fed. Reg. at 50,842-43). *Chamber* discussed this longstanding agency interpretation and described it as "flow[ing] directly from the contemporary understanding of 'investment advice for a fee.'" *Id.* at 373 (citation omitted).

Thus, *Chamber* reflects that whether a sales commission constitutes compensation for investment advice depends on the circumstances. The district

courts emphasized this Court's statement that a salesperson's commission generally reflects compensation "only for completed sales," not "for" their "investment advice." *Chamber*, 885 F.3d at 373 (citation omitted). But as the context makes clear, in that passage the Court had in mind commissions received following "ordinary buyer-seller interactions," not interactions involving relationships of trust and confidence. *Id.* The Rule at issue here, however, applies only to commissions arising from those buyer-seller interactions where the seller both provides advice tailored to the buyer's particular circumstances and persuades the buyer that the advice can be "relied upon" "as intended to advance [the buyer's] best interest." 89 Fed. Reg. at 32,122. When a salesperson persuades an investor to trust their advice and then recommends a particular financial product, the resulting commission represents "compensation, direct or indirect" for the salesperson's advice. 26 U.S.C. § 4975(e)(3)(B). The services in that case include more than the mere execution of an order to buy or sell an asset, but rather the provision of individualized advice from an investment professional in circumstances that give rise to a relationship of trust and confidence. In such instances, the compensation is for far more than a mere "sales pitch" or order-taking.

**2.** The district courts also erred in suggesting that *Chamber* requires the Department to forever preserve the five-part definition of a fiduciary that it adopted in 1975. *See* ROA.24-40636.406-08. Under that test, an individual qualified as a fiduciary only if they (1) rendered advice regarding securities or other property, (2) on

a regular basis, (3) pursuant to an agreement or understanding with the plan or a plan fiduciary that, (4) the advice will serve as a primary basis for investment decisions regarding plan assets, and that (5) the advice will be individualized based on the particular needs of the plan. 89 Fed. Reg. at 32,124 (citing the 1975 test).

Nothing in *Chamber* indicates that the 1975 test is the only or even the best way to implement the trust-and-confidence standard. To the contrary, *Chamber* reflects that there are multiple ways to identify individuals who obtain investors' trust. The authorities on which *Chamber* relied do not establish a single, immutable definition of a fiduciary. Instead, they define that term—and the related concept of trust and confidence—in a number of different ways. *See supra* pp. 27, 29-30. Those variations confirm that *Chamber* does not reduce the Department's broad statutory authority to define the term fiduciary to a single test first promulgated almost 50 years before *Chamber* was decided.

In comparison with the 1975 test, the Retirement Security Rule more fully implements *Chamber*. The 1975 test "is underinclusive . . . because it fails to capture many circumstances in which an investor would reasonably expect that they can place their trust and confidence in the advice provider." 89 Fed. Reg. at 32,132. Indeed, the Department's "experience in the current marketplace" is that the five-part definition "too often works to defeat legitimate retirement investor expectations of impartial advice." *Id.* That is unsurprising, as the five-part definition does not draw on any of the common law definitions cited by *Chamber*. *Cf. National Ass'n for Fixed*

*Annuities v. Perez*, 217 F. Supp. 3d 1, 23 (D.D.C. 2016) (noting that certain limitations in the "five-part test" are "difficult to reconcile with the statutory text").

For example, the 1975 test's "regular basis" and "primary basis" requirements exclude from the definition of a fiduciary many individuals who serve as trusted advisers. Under the regular basis requirement, a financial professional who established a relationship of trust and confidence by providing advice "for many years . . . regarding the investor's non-retirement accounts" would not qualify as a fiduciary "with respect to a recommendation to roll over" the investor's workplace retirement plan to an IRA "if that is the first instance of advice with respect to that plan account." 89 Fed. Reg. at 32,136. Likewise, the 1975 test identifies as fiduciary advice only those recommendations that comprise "a primary basis for investment decisions," 89 Fed. Reg. at 32,124, but an individual can establish a "relationship of trust and confidence" with an investor even if the investor receives advice from multiple sources. If, for instance, a retirement investor considering rolling over plan assets to an IRA chooses to get advice not only from their regular adviser, but also from a specialized expert who obtains the investor's trust, the investor should be entitled to rely on both advisers as fiduciaries, irrespective of extraneous arguments about whose advice was "primary" or "secondary." The Rule extends fiduciary status to these and other individuals who do not satisfy all five requirements of the 1975 test but who nonetheless serve as trusted advisers.

40

**3.** Similar errors underlie the district courts' discussion (*see* ROA.24-40637.411-12, 16-17) of the amended exemptions accompanying the Retirement Security Rule. ERISA authorizes the Department to create exemptions allowing classes of fiduciaries to engage in prohibited transactions. *See* 26 U.S.C. § 4975(c)(2). Consistent with that authority, the Department has established exemptions since shortly after ERISA's enactment. *See, e.g.*, 41 Fed. Reg. 56,760. At the same time that the Department issued the Retirement Security Rule, it also amended a number of exemptions, including PTE 2020-02 and PTE 84-24, which permit certain financial professionals and institutions to engage in prohibited transactions if they adhere to various requirements including impartial conduct standards. *See* 89 Fed. Reg. at 32,176.

These amended exemptions are fully consistent with the statutory criteria. To create an exemption, the Department must determine that it is "administratively feasible," "in the interests of the plan and of its participants and beneficiaries," and "protective of the rights of participants and beneficiaries of the plan." 26 U.S.C. § 4975(c)(2). The Department found that the amended exemptions satisfy those criteria, *see* 89 Fed. Reg. at 32,294 (PTE 2020-02), 89 Fed. Reg. at 32,337 (PTE 84-24), and neither district court expressed disagreement with that finding.

Instead, the district courts' rejection of the exemptions is premised on the same misunderstanding of the Rule refuted above. *Chamber* took issue with the 2016 exemptions largely because it viewed them as an attempt to "blunt" the "overinclusiveness" of that rule's definition of a fiduciary. 885 F.3d at 381. The

district courts believed that the Rule here likewise impermissibly "expanded the definition of [an] investment advice fiduciary" and that the exemptions leverage that overly-broad definition to impose requirements on individuals who should not be classified as fiduciaries in the first place. ROA.24-40637.411-12. But as discussed, the Rule's "far narrower" definition of a fiduciary captures only those who satisfy *Chamber*'s trust-and-confidence standard. 89 Fed. Reg. at 32,141. The primary consideration driving *Chamber*'s analysis of the exemptions is thus absent here.

This point is illustrated by a passage in *Chamber* that the district courts highlighted. *See* ROA.24-40637.416-17 (quoting *Chamber*, 885 F.3d at 381). As the district courts noted, *Chamber* observed that Title I expressly requires fiduciaries to adhere to duties of loyalty and care, but Title II imposes no parallel duties. 885 F.3d at 381-82 (citing 29 U.S.C. § 1101(a)(1); 26 U.S.C. § 4975(c)). *Chamber* then stated that requiring fiduciaries of Title II plans to abide by those duties would "impermissibly conflate[]" the two Titles. *Id.* at 381. When the Department clarified that the relevant exemptions did not *compel* any fiduciary to abide by the relevant duties, but simply provided fiduciaries with an additional *option*, the Court did not categorically preclude such exemptions. Instead, it emphasized that "[w]ere it not for [the Department]'s ahistorical and strained interpretation of 'fiduciary,' there would be no rationale" for creating the exemptions. *Id.* The Court thus regarded the prior exemptions as tainted by what it saw as the 2016 rule's "overbroad interpretation" of the term fiduciary. *Id.* at 383. No similar circumstances are present in this case.

The anomalous nature of plaintiffs' attack on the amended exemptions is particularly apparent here. The Department is not obligated to create administrative exemptions, and no regulated entity is required to take advantage of them. *See* 26 U.S.C. § 4975(c)(2). And the amended exemptions accompanying the Retirement Security Rule are more generous than the exemptions they replaced in multiple respects. For example, the Department has "broadened" PTE 2020-02 "to cover all principal transactions and robo-advice," neither of which were previously included to the same extent. 89 Fed. Reg. at 32,327. The district courts' nationwide stays of the exemptions thus have the effect of depriving regulated entities of relief from the transaction prohibitions, a result that has no basis in ERISA's text or in this Court's *Chamber* decision.

Other features of the prior exemptions that gave *Chamber* pause are likewise absent. Unlike the exemptions in *Chamber*, *see* 885 F.3d at 384, the amended exemptions here do not require that fiduciaries who seek to engage in prohibited transactions enter into contracts, and the Department has stated categorically that the exemptions are not intended to create a private right of action. *See* 89 Fed. Reg. at 32,311 (observing that the conditions "simply ensure[] up-front clarity about the nature of the relationship and services being provided," and do "not impose any contract or warranty requirement"). Instead, "[t]he only remedies for violations of the [amended exemptions'] conditions, and engaging in a nonexempt prohibited transaction, are those provided by Title I of ERISA, which specifically provides a

cause of action for fiduciary violations with respect to ERISA-covered Plans, and

Title II of ERISA, which provides for imposition of the excise tax." *Id.* The

amended exemptions here thus "stand[] in marked contrast" to the exemptions

included in "the Department's 2016 rulemaking." *Id.*

In any event, any concern regarding the amended exemptions would not cast

doubt on the Rule's definition of a fiduciary. Whether an individual qualifies as a

fiduciary and whether the Department should establish an exemption from the

transaction prohibitions are distinct questions that implicate different statutory

provisions. *Compare* 26 U.S.C. § 4975(e)(3) (defining the term fiduciary), *with id.*

§ 4795(c)(2) (establishing criteria governing the creation of exemptions). The Rule

accordingly makes clear that the definition of a fiduciary is severable from the

amended exemptions. *See* 89 Fed. Reg. at 32,172 ("[T]he amended regulation and

PTEs operate independently and should remain if any component of the rulemaking

is invalidated.").[6]

**4.** It was likewise error for the district courts to invoke the major questions

doctrine. *See* ROA.24-40637.413-14. In contrast to an agency's assertion of a "novel

---

[6] Although plaintiffs also suggested that the rulemaking is inconsistent with the Dodd Frank Act, the district courts appropriately declined to "address" this suggestion because plaintiffs failed to "fully develop[]" it. ROA.24-40637.417 n.9. In any case, "[t]he Department's well-settled authority under ERISA to regulate investment advice rendered by fiduciaries . . . was not impaired by the Dodd-Frank legislation," which demonstrates "Congress' clear awareness that there are overlapping Federal regulatory schemes" in this area. 89 Fed. Reg. at 32,138.

and extensive power," *Chamber*, 885 F.3d at 387, this rulemaking falls squarely within the Department's statutory authority to "define accounting, technical and trade terms used in" ERISA, 29 U.S.C. § 1135.  Consistent with that authority, the Department first promulgated a definition of the term "fiduciary" in 1975, a year after ERISA's passage.  *See* 29 C.F.R. § 2510.3-21(c)(1).  Thus, the Retirement Security Rule reflects a familiar application of a long-recognized authority.

Because the Rule simply implements *Chamber*'s construction of ERISA, the major questions doctrine has no bearing here.  *Chamber* viewed the 2016 rule as treating as a fiduciary "nearly any broker or insurance salesperson who deals with IRA clients," without regard to whether they had a relationship of trust and confidence. 885 F.3d at 382.  Here, by contrast, the Rule includes multiple additional limits and is thus "far narrower than the previous rulemaking."  89 Fed. Reg. at 32,141.  Whether the Rule's limited definition of a fiduciary permissibly captures individuals who build "relationship[s] of trust and confidence" with investors is not a major question.

To the extent the district courts viewed the Rule's "economic and political significance" as supporting application of the doctrine, they are mistaken.  ROA.24-40637.414 (citation omitted).  As an initial matter, as discussed above, the district courts glossed over the Rule's limits and thus significantly overstated its scope.  *See supra* pp. 33-38.  Moreover, under the courts' approach any regulation connected to the retirement industry (or any large industry, for that matter) might trigger the major

questions doctrine.  Nothing in Supreme Court or Fifth Circuit precedent justifies such an expansive view of the doctrine.

In any event, the Department's fiduciary definition readily satisfies the major questions doctrine.  As discussed, the definition "specifically focuses on whether the investment recommendation can be appropriately treated as trust and confidence advice," 89 Fed. Reg. at 32,141, and is markedly similar to a number of the definitions in the authorities *Chamber* invoked, *see supra* pp. 29-30.

## II.    The Remaining Factors Weigh Against a Stay

For the reasons given above, plaintiffs have failed to establish a likelihood of success on the merits and the stays should therefore be vacated.  *See Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).  Even if the Court were to conclude that plaintiffs had demonstrated a likelihood of success, two of the remaining factors—the balance of harms and the public interest, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009)—would weigh heavily against a stay.

Preventing the Retirement Security Rule from going into effect seriously harms the government and the public interest.  A stay interferes with the Department's express statutory authority to "prescribe . . . regulations" to "define accounting, technical and trade terms used in" ERISA.  29 U.S.C. § 1135.  That interference is especially pernicious here, where the Department's revised definition of a fiduciary

"better protects the interests of retirement investors" than the definition it replaces. 89 Fed. Reg. at 32,122.

As the Rule explains, the revised definition closes an "important gap." 89 Fed. Reg. at 32,122. Before the revision, there were "many situations where the retirement investor reasonably expect[ed] that their relationship with the advice provider [wa]s one in which the investor c[ould] (and should) place trust and confidence in the recommendation, yet which [we]re not covered by the 1975 regulation." *Id.* at 32,132. Those situations "expose[d investors] to higher costs, lower returns, and greater risk." *Id.* at 32,133. The Rule addresses those problems by "ensur[ing] that retirement investors' reasonable expectations are honored when they receive advice from financial professionals who hold themselves out as trusted advice providers." *Id.* at 32,122. Indeed, one commenter estimated that the Rule will save participants in workplace retirement plans "$55 billion in the first 10 years and over $130 billion in the subsequent 10 years" and investors who roll over their retirement funds into fixed indexed annuities more than "$32.5 billion in the first 10 years and over $32.5 billion in the subsequent 10 years." *Id.* at 32,133.

By contrast, plaintiffs' asserted interests warrant little if any weight. Plaintiffs primarily contend (*see* ROA.24-40637.420) that refraining from prohibited transactions (or meeting the requirements for an exemption) will involve compliance costs. Plaintiffs' argument, in other words, is that in some cases it may be costly for insurance agents and salespeople who persuade investors that they have their best

47

interests at heart to refrain from engaging in conduct that Congress deemed harmful to those investors. But if plaintiffs (and the agents and salespeople they represent) prefer to prioritize their own financial interests, they can simply avoid suggesting otherwise to investors. Equity does not recognize a significant interest in obtaining investors' trust without incurring any corresponding obligation to honor that trust.

The district courts gave only cursory consideration (*see* ROA.24-40637.420, ROA.24-10890.1518-19) to these equitable considerations. Instead, they largely viewed the balance of hardships and public interest as rising or falling with plaintiffs' merits arguments. But as the Supreme Court has emphasized, to justify the award of equitable relief, a court "must balance the competing claims of injury" and must "pay particular regard for . . . public consequences." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation marks omitted). Here, both factors tilt sharply in the government's favor.

## III.   At a Minimum, Any Relief Should Be Limited to Plaintiffs

**A.** Under Article III and fundamental equitable principles, the district courts should have limited any relief to the plaintiffs in this case. Under Article III, "a plaintiff's remedy must be limited to the inadequacy that produced his injury." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (alteration and quotation marks omitted). Principles of equity reinforce that constitutional limitation, because equitable relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Thus, English and early

American "courts of equity" typically "did not provide relief beyond the parties to the case." *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring).

Nationwide relief—whether styled as an injunction or a stay—also creates legal and practical problems. Such relief circumvents the procedural rules governing class actions, which allow relief to absent parties only if rigorous safeguards are satisfied. Fed. R. Civ. P. 23. It enables forum shopping and empowers a single district judge to effectively nullify the decisions of all other lower courts by barring application of a challenged policy in any district nationwide. *See Department of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring in the grant of stay). And it "short-circuit[s] the decisionmaking benefits of having different courts weigh in on vexing questions of law" and overburdens courts' "emergency dockets." *Arizona v. Biden*, 40 F.4th 375, 395-98 (6th Cir. 2022) (Sutton, C.J., concurring); *see also United States v. Texas*, 599 U.S. 670, 702-04 (2023) (Gorsuch, J., concurring in the judgment).

In line with those principles, the Supreme Court recently stayed a universal injunction based on five Justices' explicit conclusion that such injunctions are likely impermissible. *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring in the grant of stay); *id.* at 933 n.4 (Kavanaugh, J., concurring in the grant of stay). And on a separate occasion, three Justices admonished that "universal relief … strains our separation of powers" and advised that if "party-specific relief can adequately protect the plaintiff's interests," then "an appellate court should not hesitate to hold that broader relief is an abuse of discretion." *Texas*, 599 U.S. at 703

(Gorsuch, J., concurring in the judgment). This Court has also recognized that universal "injunctions are not 'required or even the norm,' and several justices on the Supreme Court have viewed them with conspicuous skepticism," along with "[s]cholars and judges from our sister circuits." *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 953-54 (5th Cir. 2024) (footnote omitted) (quoting *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam)).

**B.** In staying the Retirement Security Rule and accompanying exemptions on a nationwide basis, the district courts gave no meaningful weight to the Article III and equitable principles discussed above. Instead, the courts appeared to assume that a stay issued under the 5 U.S.C. § 705 must always be nationwide. For instance, the *ACLI* court believed "that party-specific relief is not even contemplated by the APA." ROA.24-10890.1521. And the *FACC* court likewise emphasized features of the Rule—including the fact that it "establish[es] a uniform" standard—that are characteristic of agency rulemaking generally and that would therefore support nationwide relief in every case. ROA.24-40637.421-22.

Even assuming that "preliminary relief under Section 705" need not be "party-restricted," ROA.24-40637.421 (quoting *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024)), that proposition by no means requires that

§ 705 relief must always be universal.[7]  The Supreme Court recently instructed that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity."  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). In *Starbucks*, the Supreme Court explained that it did "not understand the statutory directive [before it] to grant relief when the district court 'deems' it 'just and proper' to jettison the normal equitable rules."  *Id.* at 347.

The reasoning in *Starbucks* applies with equal force to § 705.  By providing that a reviewing court, "to the extent necessary to prevent irreparable injury," "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings," § 705 explicitly incorporates traditional equitable principles.  5 U.S.C. § 705; *see Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 241-42 (5th Cir. 2023) (explaining that the "preliminary-injunction factors apply" to "a stay under 5 U.S.C. § 705," which "has the practical effect of an injunction"), *rev'd on other grounds*, 602 U.S. 367 (2024).  And one such principle of "equity jurisprudence," as discussed above, is

---

[7] The proposition that relief under § 705 of the APA need not be party-specific hinges on the assumption that 5 U.S.C. § 706 authorizes courts to vacate agency rules, and that such vacatur has universal effect.  *See Career Colls.*, 98 F.4th at 255.  It is the government's view, however, that the APA does not authorize universal vacatur at all. *Accord Texas*, 599 U.S. at 693-99 (Gorsuch, J., concurring in the judgment); *see VanDerStok v. Garland*, 86 F.4th 179, 197 (5th Cir. 2023) (suggesting rules may be vacated in part), *cert. granted*, 144 S. Ct. 1390 (2024).

that any court-ordered relief "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Califano*, 442 U.S. at 702 (emphasis added); *see Louisiana*, 20 F.4th at 263 (noting that nationwide injunctions are not "required or even the norm"). The House Report that accompanied the APA thus explained that the relief authorized by § 705 "is equitable" and "would normally, if not always, be limited to the parties complainant." H.R. Rep. No. 79-1980, at 43 (1946).

The absence of support for the district courts' approach is illustrated by their suggestion that plaintiffs "need relief . . . for the [businesses] that engage with them." ROA.24-40637.422, ROA.24-10890.1521. To justify including third-party businesses in the stay, plaintiffs would need to show, at a minimum, that those businesses are subject to the Rule and that the Rule's application to the businesses will produce material harms for plaintiffs themselves. Neither district court made any such factual findings. And even putting aside that problem, if the Rule's coverage of third parties did injure plaintiffs, the proper course would be to craft a stay encompassing those particular third parties, rather than issuing a universal stay in violation of Article III and longstanding equitable principles.

# CONCLUSION

For the foregoing reasons, the judgments of the district courts should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

DAMIEN DIGGS
*United States Attorney*

SEEMA NANDA
*Solicitor of Labor*

LEIGHA SIMONTON
*United States Attorney*

WAYNE R. BERRY
*Associate Solicitor*

MEGAN HANSEN
*Counsel for Regulations*

MICHAEL S. RAAB

ALYSSA C. GEORGE
*Senior Trial Attorney*

*s/ Steven H. Hazel*
STEVEN H. HAZEL

*U.S. Department of Labor*
*Office of the Solicitor*

*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2498*
*Steven.H.Hazel@usdoj.gov*

December 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,803 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Steven H. Hazel*
Steven H. Hazel

**ADDENDUM**

## TABLE OF CONTENTS

26 U.S.C. § 4975 ......................................................................................... A1

29 U.S.C. § 1002 ......................................................................................... A3

29 U.S.C. § 1135 ......................................................................................... A4

**26 U.S.C. § 4975**

**§ 4975. Tax on prohibited transactions**

**(a) Initial taxes on disqualified person.**--There is hereby imposed a tax on each prohibited transaction. The rate of tax shall be equal to 15 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than a fiduciary acting only as such).

**(b) Additional taxes on disqualified person.**--In any case in which an initial tax is imposed by subsection (a) on a prohibited transaction and the transaction is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of the amount involved. The tax imposed by this subsection shall be paid by any disqualified person who participated in the prohibited transaction (other than a fiduciary acting only as such).

**(c) Prohibited transaction.**--

    **(1) General rule.**--For purposes of this section, the term "prohibited transaction" means any direct or indirect--

        **(A)** sale or exchange, or leasing, of any property between a plan and a disqualified person;

        **(B)** lending of money or other extension of credit between a plan and a disqualified person;

        **(C)** furnishing of goods, services, or facilities between a plan and a disqualified person;

        **(D)** transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

        **(E)** act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

        **(F)** receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

    **(2) Special exemption.**--The Secretary shall establish an exemption procedure for purposes of this subsection. Pursuant to such procedure, he may grant a conditional or unconditional exemption of any disqualified person or transaction, orders of disqualified persons or transactions, from all or part of the restrictions

imposed by paragraph (1) of this subsection. Action under this subparagraph may be taken only after consultation and coordination with the Secretary of Labor. The Secretary may not grant an exemption under this paragraph unless he finds that such exemption is--

**(A)** administratively feasible,

**(B)** in the interests of the plan and of its participants and beneficiaries, and

**(C)** protective of the rights of participants and beneficiaries of the plan.

Before granting an exemption under this paragraph, the Secretary shall require adequate notice to be given to interested persons and shall publish notice in the Federal Register of the pendency of such exemption and shall afford interested persons an opportunity to present views. No exemption may be granted under this paragraph with respect to a transaction described in subparagraph (E) or (F) of paragraph (1) unless the Secretary affords an opportunity for a hearing and makes a determination on the record with respect to the findings required under subparagraphs (A), (B), and (C) of this paragraph, except that in lieu of such hearing the Secretary may accept any record made by the Secretary of Labor with respect to an application for exemption under section 408(a) of title I of the Employee Retirement Income Security Act of 1974.

. . . .

**(e) Definitions.—**

. . . .

**(3) Fiduciary.**--For purposes of this section, the term "fiduciary" means any person who--

**(A)** exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

**(B)** renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

**(C)** has any discretionary authority or discretionary responsibility in the administration of such plan.

Such term includes any person designated under section 405(c)(1)(B) of the Employee Retirement Income Security Act of 1974.

. . . .

**29 U.S.C. § 1002**

**§ 1002. Definitions**

. . . .

**(21)(A)** Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

**(B)** If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

. . . .

**29 U.S.C. § 1135**

### § 1135. Regulations

Subject to subchapter II and section 1029 of this title, the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter. Among other things, such regulations may define accounting, technical and trade terms used in such provisions; may prescribe forms; and may provide for the keeping of books and records, and for the inspection of such books and records (subject to section 1134(a) and (b) of this title).